# In re L-S-, Respondent

*Decided April 16, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Under section 241(b)(3)(B)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3)(B)(ii) (Supp. II 1996), a determination whether an alien convicted of an aggravated felony and sentenced to less than 5 years' imprisonment has been convicted of a "particularly serious crime," thus barring the alien from withholding of removal, requires an individual examination of the nature of the conviction, the sentence imposed, and the circumstances and underlying facts of the conviction. *Matter of S-S-*, 22 I&N Dec. 3374 (BIA 1999); and *Matter of Frentescu*, 18 I&N Dec. 244 (BIA 1982), followed.

(2) An alien who was convicted of bringing an illegal alien into the United States in violation of section 274(a)(2)(B)(iii) of the Act, 8 U.S.C. § 1324(a)(2)(B)(iii) (1994 & Supp. II 1996), and sentenced to 3½ months' imprisonment has, upon consideration of the nature of the conviction and the sentence imposed, as well as the underlying facts and circumstances of the conviction, not been convicted of a "particularly serious crime" and is eligible to apply for withholding of removal under section 241(b)(3)(B)(ii) of the Act.

Rudy Cardenas, Jr., Esquire, El Centro, California, for respondent

Daniel Gershator, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; HOLMES, VILLAGELIU, FILPPU, ROSENBERG, GUENDELSBERGER, GRANT, and SCIALABBA, Board Members. Dissenting Opinion: COLE, Board Member, joined by VACCA, HEILMAN, HURWITZ, MATHON, and JONES, Board Members.

GRANT, Board Member:

The respondent has timely appealed from the Immigration Judge's decision of August 11, 1997, finding him removable and ineligible for relief. The respondent's request to prosecute his appeal without prepayment of the appropriate fee is granted. *See* 8 C.F.R. § 3.8(c) (1998). The appeal will be sustained and the record will be remanded for further proceedings.

## I. FACTS

The respondent is a 36-year-old citizen of Laos. He entered the United States at age 17 as a refugee. On May 5, 1997, the respondent was convicted of bringing an illegal alien into the United States in violation of section 274(a)(2)(B)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1324(a)(2)(B)(iii) (1994 & Supp. II 1996). On June 9, 1997, the respondent was sentenced to time served, which had been approximately 3½ months. Based on his conviction, the Immigration and Naturalization Service charged the respondent with inadmissibility pursuant to section 212(a)(6)(E)(i) of the Act, 8 U.S.C. § 1182(a)(6)(E)(i) (Supp. II 1996), as an alien who had encouraged, induced, assisted, abetted, or aided an alien to enter the United States in violation of law. The Immigration Judge found the respondent removable as charged and ineligible for all forms of relief.

On appeal, the respondent argues that the Service did not establish that he committed a removable offense; that the Service failed to establish that he knowingly assisted in the illegal entry; that he should have had an opportunity to apply for cancellation of removal; that after 20 years as a lawful permanent resident, one conviction leading to 3½ months in jail should not result in his removal; that his crime is not an aggravated felony; that he established eligibility for withholding of removal; and that he should have been put in exclusion proceedings rather than removal proceedings.

## II. ISSUE

The principal issue in this case is whether the respondent's conviction for bringing an illegal alien into the United States in violation of section 274(a)(2)(B)(iii) of the Act, an aggravated felony for which he was sentenced to 3½ months' imprisonment, constitutes a particularly serious crime such that the respondent is excepted from consideration for withholding of removal under section 241(b)(3)(B)(ii) of the Act, 8 U.S.C. § 1231(b)(3)(B)(ii) (Supp. II 1996).[1]

## III. PRELIMINARY MATTERS

The respondent was properly charged with inadmissibility and not deportability. Generally, an alien lawfully admitted for permanent residence

---

[1]Although the Immigration Judge evaluated the respondent's eligibility for withholding of deportation, the comparable relief that is available in removal proceedings is termed withholding of removal. *See* 8 C.F.R. § 208.16 (1998).

in the United States is not to be regarded as seeking admission and thus would be subject to the deportation grounds of section 237 of the Act, 8 U.S.C. § 1227 (Supp. II 1996), rather than the provisions of section 212(a). *See* section 101(a)(13)(C) of the Act, 8 U.S.C. § 1101(a)(13)(C) (Supp. II 1996). As this Board discussed in *Matter of Collado*, 21 I&N Dec. 1061 (BIA 1997, 1998), however, section 101(a)(13)(C) of the Act specifically addresses the treatment of lawful permanent residents who are described in sections 101(a)(13)(C)(i)-(vi) of the Act. Such aliens are excepted from the general class of lawful permanent resident aliens who are not regarded as seeking admission to the United States. The respondent was convicted of bringing an undocumented alien into the United States. Thus, he engaged in illegal activity after having departed the United States and is properly charged with inadmissibility. Section 101(a)(13)(C)(iii) of the Act.

We do not find that the respondent should have been put in exclusion proceedings rather than removal proceedings. Congress established removal proceedings in section 304(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-587 ("IIRIRA"). Those proceedings apply to cases which are initiated after April 1, 1997. IIRIRA § 309, 110 Stat. at 3009-625. The respondent was served with his Notice to Appear (Form I-862) on June 12, 1997. Thus, he is properly in removal proceedings.

Regarding the respondent's argument that he does not believe the Service has established that he knowingly assisted in the illegal entry, we find that no such analysis is necessary to reach the conclusion that the respondent is inadmissible. The respondent's conviction for bringing an illegal alien into the United States in violation of section 274(a) of the Act renders him inadmissible under section 212(a)(6)(E) of the Act and he is therefore removable.[2] We do not review the underlying circumstances of a conviction to reassess whether the conviction was appropriate. A conviction is final for immigration purposes unless and until the conviction has been overturned. *See Matter of Gabryelsky*, 20 I&N Dec. 750, 751-52 (BIA 1993); *see also Aguilera-Enriquez v. INS*, 516 F.2d 565, 571 (6th Cir. 1975), *cert. denied*, 423 U.S. 1050 (1976).

The crime of bringing illegal aliens into the United States in violation of section 274(a) of the Act is an aggravated felony. *See* section 101(a)(43)(N) of the Act. Section 101(a)(43)(N) of the Act provides that an aggravated felony includes

> an offense described in paragraph (1)(A) or (2) of section 274(a) (relating to alien smuggling), except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or

---

[2]Although the Immigration Judge cited the wrong ground in his decision, he applied the proper ground.

> aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this Act.

*See Matter of Ruiz*, 22 I&N Dec. 3376 (BIA 1999). The respondent was convicted pursuant to section 274(a)(2)(B)(iii) of the Act and there is no evidence that he committed the offense to aid a spouse, child, or parent.

## IV. ANALYSIS OF PARTICULARLY SERIOUS CRIME EXCEPTION

The respondent has been convicted under section 274(a)(2)(B)(iii) of the Act of the crime of bringing an illegal alien into the United States. There is no doubt of the seriousness of this offense under our immigration laws. As a consequence of this single conviction, the respondent is inadmissible to the United States under section 212(a)(6)(E)(i) of the Act and will be ineligible to be readmitted to the United States at any time if he is ordered removed. *See* section 212(a)(9)(A) of the Act. The respondent is also ineligible to apply for asylum. Sections 208(b)(2)(A)(ii), (B)(i) of the Act, 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i) (Supp. II 1996). As an alien convicted of an aggravated felony, the respondent is not eligible for cancellation of removal under section 240A(a)(3) of the Act, 8 U.S.C. § 1229b(a)(3) (Supp. II 1996). He is also precluded from applying for that relief under section 240A(b)(1)(B) because he cannot establish good moral character during the 10 years prior to application for relief.[3] Furthermore, the respondent is ineligible for voluntary departure under section 240B(b)(1)(C) of the Act, 8 U.S.C. § 1229c(b)(1)(C) (Supp. II 1996), and for a waiver of inadmissibility under section 212(h).

The issue before us, therefore, is not whether this crime is serious or whether it should result in severe restrictions on the respondent's ability to obtain benefits under our immigration laws. Those issues have been settled. The sole issue before us, rather, is whether this single conviction, with a sentence imposed of 3½ months, should be classified as a "particularly serious crime" under section 241(b)(3)(B) of the Act and thus disqualify the respondent from seeking to establish that, were he deported to Laos, it is more likely than not that his life or freedom would be threatened on account of his race, religion, nationality, political opinion, or membership in a particular social group. Section 241(b)(3)(A) of the Act; *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987).

Our judgment in this regard is discretionary. *Matter of S-S-*, 22 I&N Dec. 3374 (BIA 1999). In 1996 Congress amended section 241(b)(3)(B) of

---

[3]An alien who has been convicted of an aggravated felony cannot establish good moral character. *See* section 101(f)(8) of the Act, 8 U.S.C. § 1101(f)(8) (1994).

the Act to provide that a conviction for an aggravated felony is a "particularly serious crime" if a sentence of 5 years or more has been imposed. IIRIRA § 305(a), 110 Stat. at 3009-602. Congress also provided that this did not prohibit the Attorney General from designating other crimes not meeting these criteria as particularly serious crimes.[4] We have recently decided that in exercising this discretionary authority, we will apply the analysis set forth in *Matter of Frentescu*, 18 I&N Dec. 244 (BIA 1982), *modified, Matter of C-*, 20 I&N Dec. 529 (BIA 1992), *Matter of Gonzalez*, 19 I&N Dec. 682 (BIA 1988). *Matter of S-S-, supra*. Applying those standards to the facts of this case, we have determined that the respondent's conviction is not a conviction for a particularly serious crime, and that the case should be remanded to give the respondent an opportunity to apply for relief under section 241(b)(3).

### A. Previous Statutory Framework for Withholding of Deportation

The statutory provision for withholding of deportation was found at section 243(h) of the Act, 8 U.S.C. § 1253(h) (1994).[5] When Congress enacted the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102, it amended this provision to provide that withholding should be denied to an alien who, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." *See* section 243(h)(2)(B) of the Act.

The Board addressed the question of what would be a "particularly serious crime" in *Matter of Frentescu, supra. See also Matter of Gonzalez, supra, modified, Matter of C-, supra*. In *Matter of Frentescu*, the Board held that in judging the seriousness of a crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the respondent is a danger to the community. *Matter of Frentescu, supra*, at 247. Further, we stated that crimes against persons are more likely to be categorized as particularly serious, but that there may be instances where crimes against property will be considered to be particularly serious. *Id.* It was subsequently established

---

[4]The final paragraph of section 241(b)(3)(B) states the following:

> [A]n alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

[5]A more detailed history of withholding of deportation pursuant to section 243(h) of the Act is set forth in *Matter of Q-T-M-T-*, 21 I&N Dec. 639, at 645-47 (BIA 1996).

that once an alien is found to have committed a particularly serious crime, there is no need for a separate determination to address whether the alien is a danger to the community. *See Matter of K-*, 20 I&N Dec. 418 (BIA 1991), *aff'd, Kofa v. INS*, 60 F.3d 1084 (4th Cir. 1995); *see also Matter of Q-T-M-T-*, 21 I&N Dec. 639, at 646 (BIA 1996). The Board also determined that certain crimes could be considered per se particularly serious, and therefore, once the conviction was established, there was no need to proceed to an individualized examination of the crime. *See Matter of Frentescu, supra*, at 247; *see also Hamama v. INS*, 78 F.3d 233, 240 (6th Cir. 1996) (recognizing the Board's practice of finding that some crimes are inherently particularly serious); *Ahmetovic v. INS*, 62 F.3d 48, 52 (2d Cir. 1995) (upholding a Board decision which found that first degree manslaughter was an inherently particularly serious crime).

Congress amended section 243(h)(2) of the Act through the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, to provide that aggravated felonies are to be considered particularly serious crimes for the purpose of section 243(h)(2). *See generally  Matter of A-A-*, 20 I&N Dec. 492 (BIA 1992). This amendment eliminated the need for an individual analysis of the underlying facts and circumstances in any case in which the conviction was for an aggravated felony. *See Matter of C-, supra* (modifying *Matter of Frentescu* and its progeny in light of statutory amendment).

The next major change in the withholding law occurred with the passage of section 413(f) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1269 (enacted Apr. 24, 1996) ("AEDPA"). Section 413(f) of the AEDPA amended section 243(h) of the Act to provide the Attorney General discretionary authority to override the categorical bar designating every aggravated felony a particularly serious crime, if she determined it "is necessary to ensure compliance with the 1967 United Nations Protocol Relating to the Status of Refugees." The Board considered the effects of this provision on the aggravated felony bar in *Matter of Q-T-M-T-*, *supra*. We concluded that an alien who has been convicted of an aggravated felony or felonies and sentenced to at least 5 years of incarceration was conclusively barred from withholding of deportation. However, an alien who was convicted of an aggravated felony or felonies and sentenced to an aggregate of fewer than 5 years of incarceration would be subject to a rebuttable presumption that he or she had been convicted of a particularly serious crime, which would bar eligibility from withholding. The holding in *Matter of Q-T-M-T-, supra*, continues to apply to cases initiated before April 1, 1997, which are not controlled by the IIRIRA.

## B. Statutory and Analytic Framework for Withholding of Removal

Congress's most recent revision of the "particularly serious crime" clause in the IIRIRA accomplished what section 413(f) of the AEDPA had

not: it eliminated the categorical exception to withholding of removal for any alien convicted of an aggravated felony. Conviction of an aggravated felony no longer renders the conviction a "particularly serious crime" per se. *See Matter of S-S-, supra*.

In *Matter of S-S-*, we unanimously held that there is no statutory basis to apply the "rebuttable presumption" analysis of *Matter of Q-T-M-T* in proceedings under the new section 240 of the Act. "Congress neither imposed any presumption that an aggravated felony carrying a sentence of fewer than 5 years is a particularly serious crime, nor called for any blanket exercise of the Attorney General's authority to determine the applicability of section 241(b)(3)(B)(ii) of the Act in such cases." *Matter of S-S-, supra*, at 8. Furthermore, in the absence of a rule that every conviction under a certain category of crimes constitutes a particularly serious crime, consideration of the individual facts and circumstances is appropriate.[6] In place of a "per se" or "presumption" analysis, *Matter of S-S-* applied the analysis set forth in *Matter of Frentescu, supra*, to evaluate whether a crime is "particularly serious." We will therefore employ *Frentescu* in cases, such as this one, where a determination must be made as to the nature of the crime for the purpose of applying the exception in section 241(b)(3)(B)(ii) of the Act.[7] This inquiry does not involve an examination of the respondent's family or community ties, or the risk of persecution in the alien's native county. *See Ramirez-Ramos v. INS*, 814 F.2d 1394, 1397-98 (9th Cir. 1987). To make this determination, we look to the conviction records and sentencing information. *See Matter of Q-T-M-T-, supra*, at 20. Further, we do not engage in a retrial of the alien's criminal case or go behind the record of conviction to redetermine the alien's innocence or guilt. *Id.; cf. Matter of Carballe*, 19 I&N Dec. 357, 360-61 (BIA 1986) (noting that background information, including the circumstances of the crime, need not be admitted where a crime is designated as inherently particularly serious), *modified, Matter of C-, supra, clarified, Matter of K-, supra, modified on other grounds, Matter of Gonzales, supra*.

In determining that neither a "per se" nor a "presumption" rule is appropriate in applying the particularly serious crime exception in section 241(b)(3)(B)(ii), we are guided both by clear statements of congressional intent and by our own assessment of the balance between protecting those who would be subject to persecution if removed to a particular country, and protecting the safety of the American public.

---

[6]We left for another day the question whether, and under what conditions, it might be appropriate for the Attorney General to exercise discretion to designate certain offenses as being particularly serious crimes per se.

[7]This test would apply to aggravated felonies where the sentence is fewer than 5 years, as well as to other crimes that do not fall within the aggravated felony definition.

First, in designating those alien criminals excluded from the protection of asylum and withholding of removal, Congress has drawn a critical distinction in its use of the term "particularly serious crime." In the context of asylum, the following per se rule applies: Any alien convicted of a "particularly serious crime" is barred from being granted asylum under section 208(b)(2)(A)(ii) of the Act, and any alien convicted of an aggravated felony is considered to have been convicted of a "particularly serious crime." Section 208(b)(2)(B)(i) of the Act. In the context of relief under section 241(b)(3), however, a different per se rule applies: An alien convicted of an aggravated felony is considered to have been convicted of a particularly serious crime *only if* the alien was sentenced to a term of imprisonment of 5 years or more. Therefore, to adopt in this case a per se rule that any conviction for alien smuggling, regardless of the sentence and underlying circumstances, constitutes a conviction for a "particularly serious crime" under section 241(b)(3)(B)(ii) would be to annul the deliberate distinction made by Congress in the IIRIRA. To adopt a "presumption" that such offenses are particularly serious crimes unless proven otherwise would merely obscure the distinction and lead to results most often indistinguishable from the application of a flat-out per se rule—most aliens would not be able to meet the high burden of proof to rebut the presumption that their aggravated felony conviction is not for a "particularly serious crime."

Second, Congress deliberately eliminated the statutory presumption that all aggravated felonies are particularly serious crimes for purposes of the withholding provision, and that provision only. This is particularly notable in light of the numerous provisions found in the IIRIRA increasing the severity of the consequences for aliens convicted of crimes. *See, e.g.,* IIRIRA §§ 321(e), 110 Stat. at 3009-627 (codified as section 101(a)(43) of the Act and expanding the definition of an aggravated felony); 304(b), 110 Stat. at 3009-597 (repealing a provision permitting waiver of inadmissibility under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994)); 303, 110 Stat. at 3009-585 (codified as section 236(c) of the Act, which relates to the mandatory detention of criminal aliens); 301(b), 110 Stat. at 3009-576 (codified as section 212(a)(9)(A)(i) of the Act, which provides that aliens convicted of an aggravated felony and previously removed under section 235(b)(1) of the Act, 8 U.S.C. § 1225(b)(1) (Supp. II 1996), or at the end of proceedings under section 240 of the Act, 8 U.S.C. § 1229a (Supp. II 1996), are permanently inadmissible). The reason for this different approach is clear: Congress understood that in enacting revised section 241(b)(3), it was carrying forth the statutory implementation, previously codified in former section 243(h), of our international treaty obligations. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 428-37 (1987).

In 1968, the United States acceded to the 1967 Protocol, agreeing to apply Articles 2 through 34 of the 1951 Convention regarding the status of refugees. *See* United Nations Protocol Relating to the Status of Refugees,

*opened for signature* Jan. 31, 1967, 19 U.S.T. 6223, T.I.A.S. No. 6577, 606 U.N.T.S. 267 (entered into force Oct. 4, 1967; for United States Nov. 1 1968) ("Protocol"); United Nations Convention Relating to the Status of Refugees, *adopted* July 28, 1951, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954) ("Convention"). The Refugee Act of 1980 substituted the mandatory language of the former withholding statute for what was previously a grant of discretionary authority to the Attorney General to withhold deportation. *INS v. Stevic*, 467 U.S. 407 (1984). By amending in the IIRIRA the standards under which this relief may be made available, Congress has further clarified its understanding of our nation's obligations under the Protocol. Specifically, Congress has determined that the absolute bars to many forms of relief now contained in the Act for aliens convicted of an aggravated felony are not appropriate in the context of withholding relief because if such bars were so applied, they could threaten our compliance with the 1967 Protocol.

Third, as we did in *Matter of Q-T-M-T-*, *supra*, we take into account our own analysis of these obligations, as weighed against the interests of protecting the American public. *Id.* at 19-22. Here, it is important to note that Congress has left residuary authority with the Attorney General to designate crimes other than those which meet the per se standard of section 241(b)(3)(B)(ii) as "particularly serious crimes." The dissent argues that a broad designation of crimes such as alien smuggling as "particularly serious crimes" is essential to protect the law-abiding public from the dangers inherent in such crimes. In taking this position, however, the dissent gives insufficient weight to our obligations under the Protocol, as well as the other provisions of the Act that send an indisputable message that criminal activity of this type is not tolerated.

The Act "protects" the public from those convicted of aggravated felonies in myriad ways already noted in this decision: such aliens are ineligible for asylum, cancellation of removal, reentry after removal, and most waivers of grounds for removal. A decision to allow such an alien to apply for withholding of removal under section 241(b)(3) in no way ensures that the alien will be permitted to remain in the United States; the alien's burden of proof for this relief is significantly higher than that for asylum. *See INS v. Cardoza-Fonseca, supra; INS v. Stevic, supra; Matter of Toboso-Alfonso*, 20 I&N Dec. 819 (BIA 1990); *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987). On a purely statistical basis, most such aliens will, in the end, be ordered removed. More important, however, is that those who are granted this relief will be protected from the *probability* of being arrested, tortured, or even killed if returned to their country of origin.

A determination that a crime is "particularly serious" cannot, therefore, be made in a vacuum. It must take into account that an alien convicted of such a crime, and therefore excluded from applying for relief under section 241(b)(3), could be an alien who would otherwise meet the burden of proof

for this relief and thus would be subject to persecution when removed from the United States. A grant of relief merely prevents removal to the country where this threat exists; the alien may be removed to another country or, in the case of changed conditions in the designated country, may see his relief withdrawn. 8 C.F.R. § 208.22 (1998)**.** Thus, allowing an alien whose offense does not meet the per se rule of section 241(b)(3)(B)(ii) to merely apply for withholding of removal will preserve the balance between upholding our international obligations under the Protocol and protecting the safety of the public. Denying that opportunity, on the other hand, poses a serious risk to that balance.

### C. Analysis of the Respondent's Offense as a Particularly Serious Crime Under Section 241(b)(B)(ii) of the Act

The respondent was convicted, upon a plea of guilty, of bringing an illegal alien into the United States in violation of section 274(a)(2)(B)(iii) of the Act. That section provides for a fine and imprisonment of not more than 10 years of any person who

> knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien . . . [if] the alien is not upon arrival immediately brought and presented to an appropriate immigration officer at a designated port of entry.

According to the sentence summary chart, the respondent did not have any prior offenses and received a downward adjustment of his sentence for acceptance of responsibility. The Government recommended that he receive time served with 3 years of supervised release, and the sentencing judge accepted the recommendation. At the time of sentencing on June 9, 1997, the respondent had served approximately 3½ months in prison.

The record reflects that on February 17, 1997, the respondent and a codefendant were attempting to enter the United States through the San Ysidro port of entry when an immigration officer discovered a hidden compartment built underneath the floor of their van. Upon inspection of the compartment, the officer discovered a woman in the compartment. When questioned, the woman stated that she was a Mexican citizen without lawful status to enter or live in the United States. The woman indicated that her daughter had paid $1,000 to have her smuggled into the United States, although it is not known whom she paid. According to plan, the Mexican woman waited at the Tijuana airport until the respondent approached her and asked for her name. The respondent then led the woman to his van and instructed her to ride inside the hidden compartment.

Alien smuggling is a persistent and serious problem in the United

States. The act of smuggling can put aliens in significant danger, and in certain circumstances evidently not present here, it can also endanger the lives of United States residents. The Immigration and Nationality Act designates alien smuggling as both an aggravated felony and a crime for which a first offense can lead to 10 years of imprisonment. We consider that length of imprisonment to be significant and indicative of the seriousness with which Congress regards alien smuggling.

We note, however, that the provisions under which this respondent was convicted and sentenced do not require proof of any endangerment, harm, or intended harm. To be convicted under section 274(a)(2)(B)(iii), the defendant only needs to *bring* an alien into the United States. The intent of the defendant and whether his or her purpose is lawful or unlawful is not relevant to the question of guilt. Had serious bodily injury, jeopardy to human life, or an actual death been involved in this case however, the respondent would have been subject to sentencing under the provisions of sections 274(a)(1)(B)(iii) or (iv) of the Act, which provide for significantly enhanced penalties.

We are aware that the respondent entered into the smuggling activity for the purpose of commercial gain. Prior to the enactment of the IIRIRA, the aggravated felony definition included only those smuggling offenses under section 274(a)(1) that were committed "for the purpose of commercial advantage." Section 101(a)(43)(N) of the Act, 8 U.S.C. § 1101(a)(43)(N) (1994). This component of the definition was removed by the IIRIRA, however, so we do not find that the commercial gain aspect of this case is dispositive. It is, rather, one of the factors to consider.

Furthermore, we have previously discussed the nature of the crime of smuggling aliens for gain in the context of deciding whether that offense is a crime involving moral turpitude. *Matter of Tiwari*, 19 I&N Dec. 875 (BIA 1989). In *Matter of Tiwari*, we considered whether alien smuggling for gain is committed with "fraud or evil intent." A review of precedent cases revealed that persons convicted under former section 274(a) for bringing aliens into the United States or for transporting them within the country had been motivated by love, charity, or kindness or by religious principles. *Id.* (citing *United States v. Merkt*, 794 F.2d 950 (5th Cir. 1986), *cert. denied*, 480 U.S. 946 (1987); *Gallegos v. Hoy*, 262 F.2d 665 (9th Cir. 1958), *cert. denied*, 360 U.S. 935 (1959)). We could not conclude that the entire class of persons convicted under former section 274(a) acted with evil intent or fraud. Our decision in *Tiwari* that a conviction under section 274(a) is not necessarily a conviction for a crime involving moral turpitude should lead us to exercise great caution in designating such an offense as a particularly serious crime for purposes of section 241(b)(3)(B)(ii).

The sentence imposed in this case—time served, amounting to 3½ months in prison—further influences our decision that the conviction in the respondent's case is not a particularly serious crime. We also find it signif-

icant that there is no indication the respondent intended to harm the smuggled alien. Although the use of the hidden compartment did pose a risk to the alien, particularly in the event of a vehicular accident, the respondent did not, in fact, cause her harm. Furthermore, the lone alien smuggled in this case was neither kidnaped nor brought into the United States as part of an organized criminal enterprise to work illegally in substandard conditions. Rather, she made the arrangements with her family and willingly undertook the trip for purposes of family unification. While the owner of the van may have intended to bring other aliens into the country through the use of his "hidden compartment," the respondent did not own the van and only was hired to drive it on this one occasion. The record demonstrates that this was his first offense.

In sum, we find that the nature of the offense, the length of the sentence imposed on the respondent, and the circumstances under which this particular crime occurred do not support the conclusion that the respondent was convicted under section 274(a)(2)(B)(iii) of the Act of a particularly serious crime within the meaning of section 241(b)(3)(B)(ii). *See Matter of Frentescu, supra*. The respondent is therefore eligible to present evidence that he has a clear probability of future persecution pursuant to section 241(b)(3). We emphasize that we reach this conclusion based on the nature and circumstances of this respondent's conviction. We also note that this decision does not confer any form of relief on the respondent; it merely permits him to apply for relief.

## V. CONCLUSION

The respondent's alien smuggling offense is not a particularly serious crime within the meaning of section 241(b)(3)(B)(ii) of the Act. Accordingly, his appeal will be sustained and the record will be remanded to the Immigration Judge to permit the respondent to apply for withholding of removal.

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with this opinion and for the entry of a new decision.

Board Member Anthony C. Moscato did not participate in the decision in this case.

*DISSENTING OPINION:* Patricia A. Cole, Board Member, in which Fred W. Vacca, Michael J. Heilman, Gerald S. Hurwitz, Lauren R. Mathon, and Philemina M. Jones, Board Members, joined

I respectfully dissent. I dissent only from the majority's finding that the crime of which the respondent was convicted, bringing an illegal alien into the United States in violation of section 274(a)(2)(B)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1324(a)(2)(B)(iii) (1994 & Supp. II 1996), does not constitute a particularly serious crime pursuant to section 241(b)(3)(B)(ii) of the Act, 8 U.S.C. § 1231(b)(3)(B)(ii) (Supp. II 1996). I would find the nature and circumstances of this crime to constitute a particularly serious crime within the meaning of section 241(b)(3)(B)(ii) of the Act.

I would apply the same analytical framework as the majority and look to the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and whether the type and circumstances of the crime indicate that the respondent is a danger to the community. *See Matter of Frentescu,* 18 I&N Dec. 244 (BIA 1982), *modified, Matter of C-*, 20 I&N Dec. 529 (BIA 1992), *Matter of Gonzalez,* 19 I&N Dec. 682 (BIA 1988); *see also Matter of S-S-,* 22 I&N Dec. 3374 (BIA 1999). I also emphasize that I am not making a finding that all convictions for bringing illegal aliens into the United States are per se particularly serious crimes. I dissent only from the result reached by the majority in this case.

The majority's analysis recognizes the serious nature of the crime. The respondent was convicted of bringing an alien into the United States "knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States." Section 274(a)(2) of the Act. The majority also acknowledges the immigration consequences that Congress mandates for an aggravated felony conviction. The respondent is removable from the United States and the respondent's conviction is a statutory bar to most forms of relief from removal, i.e., cancellation of removal, asylum, and voluntary departure, and the respondent is ineligible for readmission to the United States and for a waiver of inadmissibility. I agree with the majority that alien smuggling is a persistent and serious problem faced by the United States. The United States expends tremendous resources to combat alien smuggling. Smuggling operations cause untold misery to the population in the form of high-speed chases, high-risk crossings that lead to injury and in extreme cases death, and high crime along the border areas.

The nature of this smuggling crime requires the specific intent that the defendant knew the alien being smuggled had not received prior official authorization to enter the United States. The statute authorizes imprisonment for a violation of this section of up to 10 years. This is a significant period of time; it signals Congress' intent to treat alien smuggling as a serious crime. I note further that Congress designated this offense an aggravated felony regardless of the sentence imposed. *See* sec-

tion 101(a)(43)(N) of the Act, 8 U.S.C. § 1101(a)(43)(N) (Supp. II 1996).

The majority's reliance on *Matter of Tiwari*, 19 I&N Dec. 875 (BIA 1989), is misplaced. In that decision we found only that we could not conclude that the entire class of persons convicted under former section 274(a) acted with evil intent or fraud. Therefore, a conviction for alien smuggling would not render the alien deportable under section 241(a)(4) of the Act, 8 U.S.C. § 1251(a)(4) (1988), as an alien convicted of a crime involving moral turpitude. However, we noted that aliens who have smuggled other aliens "for gain" would arguably be deportable as aliens "convicted of crimes involving moral turpitude." Our analysis under *Matter of Frentescu* permits scrutiny of each crime and would permit consideration of whether an alien is motivated by commercial gain and fraud, as here, or by love, charity, kindness, or religious principles, as distinguished in *Tiwari*.

The circumstances of this crime highlight some of the troubling aspects of alien smuggling. The respondent's testimony demonstrates that he was part of an organized smuggling operation. This respondent was paid to bring the undocumented woman into the United States. He did not know the woman in the van. He brought the alien in using a van especially outfitted for the journey. The woman was kept in a small, confined compartment slung underneath the van. She was shut in that dark, confined space with no idea of how long she would have to stay there without fresh air, water, or food. Due to the makeshift aspect of the compartment and its location on the floor of the van, this woman was at a heightened risk of asphyxiation or injury in the event of an accident brought about by a traffic collision or by a flight from authorities.

I am not swayed by the argument that the driver did not intend to harm the alien and she was not harmed. If bodily injury, jeopardy to life, or actual death occurred, the respondent would have been subject to enhanced sentencing penalties. In fact, had actual harm occurred, the respondent likely would have been charged with another offense. While I agree that the provision under which the respondent was convicted does not require proof of any endangerment, harm, or intended harm, the nature and circumstances of this crime that the respondent committed placed the smuggled woman's life in danger. Although the respondent testified that this was his first time engaging in smuggling activity, we agree with the Immigration Judge that the respondent's credibility in this regard was called into question when he equivocated about whether he knew that his actions were illegal at the time he performed them.[8]

While the sentence actually imposed, 3½ months, time served, was not

---

[8]The respondent conceded that the act was very serious and said that he did not know what the term "smuggling" meant until he got caught. He said that he knew the smuggling was illegal when he did it.

significant, the commercial aspect, the ties to an organized group, and the inherent dangers raise this crime to the level of a particularly serious crime. In revising section 243(h)(2) of the Act, 8 U.S.C. § 1253(h) (1994), Congress specifically reserved authority for the Attorney General to designate crimes with an aggregate term of imprisonment of less than 5 years to be particularly serious crimes. I would find that this is one instance where that authority should be exercised.