

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-17-2008

# Salazar Quiceno v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4287

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Salazar Quiceno v. Atty Gen USA" (2008). *2008 Decisions*. Paper 87.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/87

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4287

CARLOS ENRIQUE SALAZAR QUICENO,

Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,

Respondent

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A22-534-601)
Immigration Judge: Honorable Walter A. Durling

Argued November 20, 2008

Before: FUENTES, HARDIMAN and GARTH, *Circuit Judges*.

(Filed: December 17, 2008)

Michael Z. Goldman (Argued)
Dechert
1095 Avenue of the Americas
New York, NY 10036
        *Attorney for Petitioner*

Jeffrey L. Menkin (Argued)
Ari Nazarov
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044-0000
        *Attorneys for Respondent*

----

OPINION OF THE COURT

----

HARDIMAN, *Circuit Judge*.

Petitioner Carlos Enrique Salazar Quiceno[1] appeals an order of the Board of Immigration Appeals (BIA) reversing the Immigration Judge's (IJ) grant of withholding of removal.  Because the BIA did not err in finding that Salazar was convicted of a "particularly serious crime," we will deny the petition for review.

I.

As we write exclusively for the parties, who are familiar with the procedural context and factual history of the case, we recount only those facts necessary to our decision.

A native and citizen of Colombia, Salazar entered the United States in 1972 as a nonimmigrant visitor and became a lawful permanent resident in 1978.  On January 29, 2004, Salazar pleaded guilty in New York state court to attempted robbery in the third

----

[1]Salazar is a transgendered female who identifies as a woman and has completed sex reassignment surgery.

2

degree and was sentenced to five years probation.  N.Y. PENAL LAW §§ 110, 160.05

(McKinney 2008).  Two years later, Salazar pleaded guilty to soliciting prostitution,

which caused her probation on the armed robbery conviction to be revoked, resulting in a

sentence of one to three years imprisonment.

The Department of Homeland Security (DHS) issued a Notice to Appear (NTA)

charging Salazar with being subject to removal for having been convicted of an

aggravated felony.  INA § 237(a)(2)(A)(iii); 8 U.S.C. § 1227(a)(2)(A)(ii).  Salazar

admitted the factual allegations in the NTA, but applied for withholding of removal and

protection under the Convention Against Torture (CAT).

On May 8, 2007, the IJ found that Salazar qualified for withholding of removal,

holding that she had "met [her] burden of proof to establish that [s]he is likely to

encounter persecution as a member of the extended LGBT community in Colombia."

Prior to making this determination, the IJ found as a threshold matter that Salazar was not

barred from seeking withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(iii) because

her armed robbery conviction was not a "particularly serious crime."  In his written

decision, the IJ credited Salazar's testimony regarding the armed robbery.

The Department of Homeland Security (DHS) appealed the IJ's decision.  The

BIA sustained the appeal, concluding that the IJ erred in determining that Salazar's

conviction for attempted robbery was not a "particularly serious crime" that would render

her ineligible for withholding of removal.

3

Salazar filed a Petition for Summary Action or Review on November 6, 2007, and concurrently filed an Emergency Motion for Stay of Removal. Though we eventually granted that motion on January 14, 2008, DHS removed Salazar to Colombia on December 10, 2007, prior to our grant. Despite Salazar's absence, we now hear this appeal.[2]

## II.

We have jurisdiction to review the BIA's order under 8 U.S.C. § 1252(a). Under *Alaka v. Attorney General*, 456 F.3d 88 (3d Cir. 2006), we review *de novo* the question whether Salazar's robbery conviction is a particularly serious crime. *Id.* at 104.[3]

---

[2]At oral argument, we questioned counsel for the Government regarding the circumstances surrounding Salazar's removal. On December 4, 2008, counsel reported in writing that Salazar's removal was due to a lack of communication between DHS's Immigration and Customs Enforcement (ICE) and the Department of Justice Office of Immigration Litigation (OIL). Because the Philadelphia ICE office failed to notify OIL that Salazar was scheduled for removal, OIL did not notify the Clerk of the Court, which would have triggered expedited review of Salazar's stay motion. Although we recognize the challenges DHS faces in regulating the status of those persons who fall within its jurisdiction, we are troubled by the oversight in this case. We trust and expect that DHS will be more vigilant in ensuring others are removed only after this Court has been notified so that we may have the opportunity to review an alien's motion for stay of removal before she is removed.

[3]The Government originally moved to dismiss this petition for lack of jurisdiction, arguing that the BIA's decision whether a crime is "particularly serious" is discretionary and unreviewable under 8 U.S.C. §1252(a)(2)(B)(ii). The Government's reliance on *Chong v. District Director,* 264 F.3d 378 (3d Cir. 2001), is misplaced. Although *Chong* characterized the BIA's decision on the particularly serious crime issue as discretionary, *id.* at 387-88, we made clear in *Alaka* that § 1252(a)(2)(D) – enacted nearly four years after we decided *Chong* – restored jurisdiction to review all constitutional and legal questions raised in a petition for review, notwithstanding the jurisdiction-stripping provisions of the Immigration and Naturalization Act. *See Alaka*, 456 F.3d at 103.

4

Salazar asserts that the BIA erred by applying the wrong legal standard in its "particularly serious crime" analysis. In the withholding of removal context, a particularly serious crime is an aggravated felony for which the alien was sentenced to five years imprisonment or an aggravated felony that the Attorney General deems a particularly serious crime. 8 U.S.C. § 1231(b)(3)(B); *Alaka*, 456 F.3d at 105. The INA is silent concerning how the Board should determine whether an alien has committed a "particularly serious crime" when she is convicted of an aggravated felony, but sentenced to less than five years imprisonment. *Chong v. District Director,* 264 F.3d 378, 387 (3d Cir. 2001). In those cases, the statute grants the Attorney General discretion to determine whether the alien has committed a "particularly serious crime." *Id.* We will defer to the BIA's interpretation of the statutory phrase "particularly serious crime" as long as it is reasonable. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843-44 (1984); *Chong*, 264 F.3d at 387.

Although the BIA's decision did not reference its most recent standard for determining what constituted a particularly serious crime, *see In re N-A-M-*, 24 I. & N. Dec. 336 (BIA 2007), the BIA's analysis in Salazar's case was consistent therewith.[4] The BIA properly focused on the nature of the offense for which Salazar was convicted, rather than on the likelihood of future misconduct. *See id.* at 342. The BIA observed that the statute under which Salazar was convicted requires an intention to use, or threaten to use,

---

[4]*N-A-M-* was decided just five days prior to the BIA's decision in Salazar's case.

physical force upon another person, while noting that the use or threat of violence during a crime is a significant factor when determining whether the crime is particularly serious. *See In re L-S-*, 22 I. & N. Dec. 645, 655 (BIA 1999). In doing so, the BIA corrected the IJ's legal error in ignoring the elements of Salazar's offense.

Salazar asserts that the BIA erred by failing to defer to the IJ's findings of fact. We disagree. The BIA was under no obligation to defer to the IJ's factual findings to the extent those findings credited Salazar's testimony alone in contravention of her crime. Indeed, the BIA correctly noted that Salazar's version of the events was inconsistent with her guilty plea. In contrast to the IJ, the BIA properly focused on the nature of the underlying conviction, rather than impermissibly relitigating Salazar's crime. *See id.* at 651 ("Further, we do not engage in a retrial of the alien's criminal case or go behind the record of conviction to redetermine the alien's innocence or guilt."). The BIA properly analyzed the statutory elements of the crime for which Salazar was convicted, the record of her conviction, and the presentence investigation report (PSR).[5]

---

[5]In her supplemental brief, Salazar argues that the BIA erred when it referred to the PSR. We disagree because the portion of the PSR cited by the BIA is consistent with the crime to which Salazar pleaded guilty. Though the Court of Appeals for the Second Circuit has questioned the reliability of PSRs, *see Dickson v. Ashcroft*, 346 F.3d 44, 54 (2d Cir. 2003), here Salazar pleaded guilty to a crime whose elements entail the very facts cited in the PSR. *N-A-M-* requires the BIA to consider "all reliable information" rather then being "limited to reviewing the record of conviction and sentencing information." 24 I. & N. Dec. at 343. In the circumstances of this case, we are confident that the portion of the PSR cited by the BIA was reliable.

Because the record illustrates that the BIA assessed the proper factors under *N-A-M-*, we need not determine whether it wrongly applied the standard laid out in *Matter of Frentescu*, 18 I. & N. Dec. 244 (BIA 1982). Though the BIA cited the *Frentescu* standard – which, according to *N-A-M-*, placed undue emphasis on whether an alien will be a future danger to the community – there is no indication in the record that the BIA considered Salazar's future dangerousness. Unlike *Yusapov v. Attorney General*, 518 F.3d 185 (3d Cir. 2008), upon which Salazar relies, here we can discern from the record that the BIA applied the correct standard, so remand is unnecessary. *See id.* at 202.

For the foregoing reasons, we will deny Salazar's petition for review.


GARTH, Circuit Judge, *dissenting*:

The majority would affirm the BIA's order finding Salazar's conviction to be a "particularly serious crime" because it believes the BIA properly disregarded the IJ's factual findings. I disagree and thus dissent.

## I.

This proceeding turns on the classification of a single conviction: Salazar's guilty plea to attempted robbery in the third degree. According to the presentence investigation report, Salazar and an unidentified accomplice robbed a taxi driver in Queens County, New York. The taxi driver told police that Salazar was inside the taxi while the accomplice followed on a bicycle; when the taxi stopped, the accomplice attacked the driver and took $87. The accomplice was never apprehended.

7

At the immigration hearing, however, Salazar provided a different account of events. She testified that the taxi driver gave her $20 for sex, became angry when she left the cab because he could not ejaculate after fifteen minutes, then called the police and falsely accused her of robbery as revenge. She claimed she pleaded guilty to the charge because it was Christmas and she wanted to be with her family.

The IJ determined that Salazar's conviction was not for a "particularly serious crime." Specifically, the IJ credited Salazar's testimony that the taxi driver had lied, and also found that no weapon was involved and that her initial sentence was only for probation.[6] The IJ then ordered withholding of removal because he determined that Salazar "is likely to encounter persecution as a member of the extended LGBT community in Colombia." Pet'r's App. 13.

The BIA disagreed and reversed the IJ's determination on the basis that the conviction was for a particularly serious crime:

> The respondent's attempt conviction requires that [s]he
> intended to use or threaten to use physical force upon another
> person, and engaged in conduct that tended to effect such use

_____

[6] The IJ stated:
> After applying the applicable standards to determine whether
> respondent's attempted robbery conviction constitutes a
> "particularly serious crime," it is determined that the
> conviction falls short in this regard. Respondent testified that
> the cabbie refused to pay for sexual services for which he had
> propositioned and then called the police and lied to them
> about her trying to rob him. No weapon was involved and her
> initial sentence was time served and five years' probation.

Pet'r's App. 9 (citation omitted).

8

or threat of physical force. The use or threat of violence during a crime is a significant factor when determining whether a crime is particularly serious. The respondent's assertion of innocence is unavailing. The respondent stands convicted of attempted robbery and the Board cannot reassess guilt or innocence. The presentence investigation report indicates that the respondent acted in concert with another individual who grabbed a taxicab driver by the neck and robbed him. Because the respondent's crime involved the intent to threaten or use force against a person and conduct tending to effect such threat or use of force, we conclude that it is a particularly serious crime rendering the respondent ineligible for withholding of removal.

Pet'r's App. 6-7 (citations omitted).

## II.

The BIA generally assesses the seriousness of a crime by "examin[ing] a variety of factors[,] [having] found that 'the consideration of the individual facts and circumstances is appropriate.'" In re N-A-M-, 24 I. & N. Dec. 336, 342 (BIA 2007) (internal citation omitted). These factors have included: "[1] the nature of the conviction, [2] the circumstances and underlying facts of the conviction, [3] the type of sentence imposed, and, [4] most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." In re Frentescu, 18 I. & N. Dec. 244, 247 (BIA 1982). Since Frentescu, the BIA's approach has "evolved" such that the BIA now places lesser weight on the type of sentence imposed and whether an alien is a danger to the community. In re N-A-M-, 24 I. & N. Dec. at 342-43. Nevertheless, the BIA

9

continues to apply a fact-based approach in evaluating the seriousness of the actual crime committed.

On some occasions, the BIA has substituted a categorical approach for the case-by-case <u>Frentescu</u> analysis to find that certain crimes are <u>per se</u> particularly serious based solely on the statutory elements of the offense.  <u>See</u> <u>In re Q-T-M-T-</u>, 21 I. & N. Dec. 639, 650-51 (BIA 1996).  But neither the majority nor the Government takes the position that the BIA applied the categorical approach in this matter.  Had the BIA done so, it would have declined to examine the circumstances and events leading to Salazar's guilty plea.  <u>Compare</u> <u>Ahmetovic v. INS</u>, 62 F.3d 48, 52 (2d Cir. 1995) (noting that the BIA explicitly declined such examination in finding first degree manslaughter to be <u>per se</u> particularly serious).

Instead, the BIA cited the four <u>Frentescu</u> factors as the governing legal standard, and relied on the presentence investigation report to determine that the victim in this case was grabbed by his neck.  It was this fact that persuaded the BIA that Salazar's crime was "particularly serious."  In so doing, the BIA made an independent finding of fact.[7]

---

[7] Although the presentence investigation report was introduced into evidence before the immigration court, the IJ did not make any findings of fact with regard to it. <u>Cf.</u> <u>Chalfant v. Wilmington Inst.</u>, 574 F.2d 739, 750 (3d Cir. 1978) (en banc) (Garth, J., dissenting) ("[A] district court is not required to make findings on all the evidence presented if the findings that it does make are sufficient to support its ultimate conclusion . . . .  Furthermore, the district court need not make findings which assert the reciprocal negative of each of its affirmative findings.").  The IJ may not reassess guilt or innocence, but neither is he required to accept verbatim the account of events as provided in the presentence investigation report.  <u>See</u> <u>Dickson v. Ashcroft</u>, 346 F.3d 44, 54-55 (2d Cir. 2003) (holding that the BIA erred in relying on the factual narrative in the

But the BIA is not free to make its own factual findings; rather:

> The BIA is bound by the IJ's factual determinations "including findings as to the credibility of testimony" and reviews these findings only to determine whether they are clearly erroneous.

Sioe Tjen Wong v. Att'y Gen., 539 F.3d 225, 230 (3d Cir. 2008) (quoting 8 C.F.R. § 1003.1(d)(3)(i)). "'The Board is an appellate body whose function is to review, not to create, a record.'" In re A-P-, 22 I. & N. Dec. 468, 476 (BIA 1999) (internal citation omitted).

Moreover, not only did the BIA create its own factual record, it utterly disregarded the factual record created by the IJ. Nowhere did the BIA mention—let alone find clearly erroneous—the IJ's factual findings that no weapon was used and that the original sentence involved no term of imprisonment. For the BIA to properly reverse the IJ's determination, it needed to find either that the offense was particularly serious despite these mitigating facts, or find that these factual findings were clearly erroneous. Cf. Wang v. BIA, 437 F.3d 270, 275 (2d Cir. 2006) ("The BIA should demonstrate that it has considered such evidence, even if only to dismiss it.").

_____

presentence report because it "may include allegations that were not proven at trial, as well as alleged facts that would have been inadmissible at trial had the prosecution attempted to present them"). By contrast, the BIA appears to have adopted wholesale the presentence investigation report as the true account of events.

11

The majority rests principally on the argument that "[t]he BIA was under no obligation to defer to the IJ's factual findings to the extent those findings credited Salazar's testimony alone in contravention of her crime." In so doing, both the BIA and the majority have forsaken and ignored our precedent that the trial forum (here, the IJ) makes all factual findings and that the appellate forum (here, the BIA) does not. Sioe Tjen Wong, 539 F.3d at 230; In re A-P-, 22 I. & N. Dec. at 476. Specifically, I refer to the IJ's findings that "[n]o weapon was involved and [that] her initial sentence was time served and five years' probation." Pet'r's App. 9. Conversely, even granting that the IJ was not allowed to credit Salazar's protestations of innocence, the IJ was not compelled to credit the taxi driver's statement that he was grabbed by the neck. Cf. People v. Hassett, 533 N.Y.S.2d 958 (N.Y. App. Div. 1988) (holding that even a push is sufficient force to sustain a conviction for attempted robbery in the third degree).

The majority compounds its error when it states that the BIA may limit its Frentescu analysis to the statutory elements, the record of conviction, and the presentence investigation report. Unless the BIA takes the categorical approach—in which case it may rely only on the statutory elements—it must consider the circumstances and underlying facts of the conviction. Afridi v. Gonzales, 442 F.3d 1212, 1221 (9th Cir. 2006) (concluding "that the BIA acted arbitrarily and capriciously in failing in its duty to consider the facts and circumstances of Mr. Afridi's conviction"), abrogated on other grounds by Estrada-Espinoza v. Mukasey, No. 05-75850, 2008 WL 4615681 (9th Cir. Oct. 20, 2008); Yousefi v. INS, 260 F.3d 318, 329-30 (4th Cir. 2001) (vacating the BIA's

12

decision as arbitrary and capricious where it failed to consider "key <u>Frentescu</u> factors" including "the circumstances and underlying facts of the conviction"). To the extent that the IJ made findings regarding the circumstances and underlying facts that did not undermine the fact of Salazar's conviction, the BIA erred in failing to consider them.

## III.

The BIA improperly arrogated to itself the IJ's function as factfinder and failed to defer or give credit to the IJ's findings. Accordingly, I would vacate the BIA's decision, and remand for further consideration of whether Salazar's conviction was for a particularly serious crime and, if necessary, whether Salazar established a clear probability of persecution.[8]

I respectfully dissent.

---

[8] Salazar must establish a "clear probability" of persecution to receive withholding of removal. <u>Toussaint v. Att'y Gen.</u>, 455 F.3d 409, 413 (3d Cir. 2006). The BIA summarily stated that the record did not show that the Colombian government <u>directly</u> persecutes its citizens based on gender or gender alteration. But the IJ engaged in a lengthy discussion explaining that "members of the LGBT community . . . cannot rely on the [Colombian] government for protection from being targeted on account of the social group membership. Indeed, members of the government's own military have participated in the violent targeting of the LGBT community . . . ." Pet'r's App. 13. The BIA did not address this alternative claim. <u>See</u> <u>Sukwanputra v. Gonzales</u>, 434 F.3d 627, 637 (3d Cir. 2006) (remanding for reconsideration where the IJ failed to adequately address petitioner's claim of a pattern or practice of persecution).