**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VIRGILIO ANAYA-ORTIZ,
                    *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,
                    *Respondent.*

No. 03-74666

Agency No.
A092-962-367

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
August 6, 2007—Pasadena, California

Filed January 27, 2009

Before: Marsha S. Berzon and Sandra S. Ikuta, Circuit
Judges, and James K. Singleton,* Senior District Judge.

Opinion by Judge Ikuta

---

*The Honorable James K. Singleton, United States District Judge for
the District of Alaska, sitting by designation.

## COUNSEL

Gary Finn, Indio, California, for the petitioner.

Jennifer J. Keeney and Melissa Neiman-Kelting, Washington, D.C., for the respondent.

## OPINION

IKUTA, Circuit Judge:

Virgilio Anaya-Ortiz (Anaya), a native and citizen of Mexico, petitions for review of a decision by the Board of Immigration Appeals (BIA) dismissing his appeal and ordering him removed to Mexico. We deny the petition.

I

According to an abstract of judgment dated June 4, 2001, Anaya pleaded guilty to a violation of California Penal Code § 12021(a)(1) for the crime of "POSSESSION OF A FIRE-ARM BY A FELON" on March 21, 2001.[1] He was sentenced

---

[1]California Penal Code § 12021(a)(1) states:

  Any person who has been convicted of a felony under the laws

to two years and eight months of imprisonment. The information under which he was charged stated that the predicate offense for the felon-in-possession violation was a prior conviction for "Driving Under the Influence & Causing Injury, a felony, in violation of Vehicle Code section 23153(b)."

On August 29, 2002, the former Immigration and Naturalization Service (INS) placed Anaya in removal proceedings. The INS charged that Anaya was removable under 8 U.S.C. § 1227(a)(2)(A)(iii), which states that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." For purposes of immigration law, an "aggravated felony" is an offense defined in 8 U.S.C. § 1101(a)(43). Section 1101(a)(43)(E)(ii) defines "aggravated felony" as including an offense "described in" the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1).[2] A violation of § 922(g)(1) includes the following elements relevant to this case: (1) the person previously has been convicted of a crime punishable by a term of imprisonment of more than one year; and (2) the person has possessed any firearm "in or affecting" interstate or foreign commerce.[3] The INS charged that Anaya's convic-

---

of the United States, the State of California, or any other state, government, or country or of an offense enumerated in subdivision (a), (b), or (d) of Section 12001.6 [specified offenses involving the violent use of a firearm], or who is addicted to the use of any narcotic drug, and who owns, purchases, receives, or has in his or her possession or under his or her custody or control any firearm is guilty of a felony.

[2] 8 U.S.C. § 1101(a)(43) states: "The term 'aggravated felony' means . . . (E) an offense described in . . . (ii) section 922(g)(1), (2), (3), (4), or (5), (j), (n), (o), (p), or (r) or 924(b) or (h) of Title 18 (relating to firearms offenses)."

[3] 18 U.S.C. § 922(g)(1) provides:

(g)   It shall be unlawful for any person—

(1)   who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . .

tion of being a felon in possession of a firearm under California Penal Code § 12021(a)(1) met the description of the federal felon-in-possession offense in § 922(g)(1), and therefore qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(E)(ii).

At Anaya's initial removal hearing, the IJ agreed with the INS's position and found Anaya removable as charged. The IJ also determined that Anaya was ineligible for cancellation of removal, relief available to certain lawful permanent residents who would otherwise be removable, because Anaya had been convicted of an aggravated felony. *See* 8 U.S.C. § 1229b.[4] The IJ granted Anaya a continuance to allow him to apply for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3)(A).[5]

After receiving Anaya's application for withholding of removal, the IJ reconvened a hearing on March 10, 2003 to

---

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

[4]8 U.S.C. § 1229b(a) states:

The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—

(1)   has been an alien lawfully admitted for permanent residence for not less than 5 years,

(2)   has resided in the United States continuously for 7 years after having been admitted in any status, and

(3)   has not been convicted of any aggravated felony.

[5]Section 1231(b)(3)(A) provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."

determine Anaya's eligibility.[6] At that hearing, Anaya admitted that he had pleaded guilty to being a felon in possession of a firearm on March 21, 2001. He testified that the predicate offense to his felon-in-possession conviction was a drunk-driving conviction, for which he was sentenced to one year in jail. According to his testimony before the IJ, Anaya drove into a house while driving drunk. The collision caused part of the house's sheetrock wall to collapse on an elderly woman who lived inside, causing injuries to her shoulder and leg. Anaya testified that his victim "ended up being okay right away afterwards because the judge even mentioned to me, he said that it, if there had been some kind of injury, you know, and something more serious to her I would have gotten some kind of cell sentence."

On the basis of Anaya's testimony regarding his drunk-driving conviction, the IJ held that Anaya had been convicted of a "particularly serious crime" and was therefore ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(ii). The IJ also held that Anaya was ineligible for relief under the Convention Against Torture (CAT), 8 C.F.R. § 1208.16-18, and ordered him removed from the United States.

Anaya appealed this decision to the BIA. On November 21, 2003, the BIA affirmed the IJ's decision. The BIA concluded that Anaya was removable as an aggravated felon and that he had committed a "particularly serious crime" because "after drinking alcohol to the point where he was intoxicated, [he] began driving a motor vehicle in reckless disregard for persons or property whereupon he drove his car into the home of his victim causing property damage and bodily injury." After rejecting Anaya's remaining arguments, the BIA dismissed Anaya's appeal. Anaya timely filed a petition for review.

---

[6]An alien is ineligible for withholding of removal if "the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B)(ii).

Anaya raises two arguments before us: (1) that he is not removable because his felon-in-possession conviction does not constitute a conviction of an aggravated felony; and (2) that he is eligible for withholding of removal because his drunk-driving conviction does not constitute a conviction of a "particularly serious crime." We address each in turn.

II

Anaya's first argument is that the IJ and BIA erred in holding that he was removable as an aggravated felon under 8 U.S.C. § 1101(a)(43)(E)(ii). Specifically, he argues that his conviction for being a felon in possession of a firearm under California Penal Code § 12021(a)(1) does not qualify as an "aggravated felony" conviction for immigration purposes.

Following the framework articulated in *Taylor v. United States*, 495 U.S. 575 (1990), we answer this question in two steps. First, we "compare the elements of the statute of conviction with a federal definition of the crime to determine whether conduct proscribed by the statute is broader than the generic federal definition." *Quintero-Salazar v. Keisler*, 506 F.3d 688, 692 (9th Cir. 2007). We refer to this step in our analysis as the "categorical approach," because in this step we determine whether the statute of conviction categorically qualifies as a generic federal crime. Second, if the statute of conviction criminalizes a broader range of conduct than the federal generic crime, we use the modified categorical approach, which requires us to review the record of conviction to determine whether a defendant was necessarily convicted of the elements of the federal generic crime. *See Shepard v. United States*, 544 U.S. 13, 20-21 (2005). In making this determination, we may consider only "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information." *Id.* at 26. A "comparable judicial record" includes a document

(such as a minute order) prepared by a neutral officer of the court, provided that the defendant has the right to examine the document and challenge its accuracy. *See United States v. Snellenberger*, 548 F.3d 699, 2008 WL 4717190, *2 (9th Cir. Oct. 28, 2008) (en banc) (per curiam).

**[1]** Anaya first contends that the state statute of conviction, California Penal Code § 12021(a)(1), cannot qualify as the generic federal offense of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), under the categorical approach. Anaya argues that § 922(g)(1) includes an interstate-commerce element not present in the state offense. *See Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1073 (9th Cir. 2007) (en banc). But this argument is foreclosed by *United States v. Castillo-Rivera*, which held that a state crime of conviction need not have the interstate-commerce element contained in 18 U.S.C. § 922(g)(1) to qualify as an aggravated felony under § 1101(a)(43)(E)(ii). *See United States v. Castillo-Rivera*, 244 F.3d 1020, 1024 (9th Cir. 2001). While *Castillo-Rivera* "dealt with categorizing a prior conviction for purposes of sentencing in a criminal case, the [Supreme] Court has noted that where a statute 'has both criminal and noncriminal applications,' the statute should be consistently interpreted in both criminal and noncriminal, *i.e.*, immigration, applications." *Martinez-Perez v. Gonzalez*, 417 F.3d 1022, 1028 (9th Cir. 2005) (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004)); *see also United States v. Figueroa-Ocampo*, 494 F.3d 1211, 1216 (9th Cir. 2007) (noting that "aggravated felony" has the same meaning under the INA and the Sentencing Guidelines).

**[2]** After rejecting the petitioner's interstate-commerce argument in *Castillo-Rivera*, we explained that, "[t]o the extent that the full range of conduct encompassed by CPC § 12021(a) may not constitute an aggravated felony as an offense described in 18 U.S.C. § 922(g)(1) (*e.g.*, § 12021(a) appears to include the possession of a firearm by an individual convicted of specified misdemeanors, as well as by one 'who

is addicted to the use of any narcotic drug'), the court may follow a 'modified categorical approach.' " 244 F.3d at 1022. We follow the same course here.

**[3]** Accordingly, we next address Anaya's contention that his record of conviction does not establish that he was necessarily convicted of all the elements of § 922(g)(1) under the modified categorical approach. We conclude that it does. Anaya's abstract of judgment states that he was convicted of the crime of "POSSESSION OF A FIREARM BY A FELON" and sentenced to a term of imprisonment of two years and eight months, which is sufficient under the modified categorical approach to confirm that he was necessarily convicted of the elements of the generic felon-in-possession offense, § 922(g)(1). *See Castillo-Rivera*, 244 F.3d at 1023. In light of *Snellenberger*, we may rely on Anaya's abstract of judgment in making this determination. Like the minute order at issue in *Snellenberger*, an abstract of judgment is not "a secret document." 2008 WL 4717190 at *2. Under California law, an abstract of judgment is "a contemporaneous, statutorily sanctioned, officially prepared clerical record of the conviction and sentence." *People v. Delgado*, 183 P.3d 1226, 1234 (Cal. 2008) (emphasis omitted). It is ordinarily prepared by the clerk of court to "digest or summarize" a judgment of conviction and for use as the commitment order. *People v. Mitchell*, 26 P.3d 1040, 1042 (Cal. 2001); Cal. Penal Code § 1213(a) (requiring, in most cases, that a minute order or abstract of judgment be furnished to the officer charged with executing a court's probationary order or judgment). A court may correct any errors in the abstract of judgment "on its own motion or upon the application of the parties." *Mitchell*, 26 P.3d at 1042; *accord People v. Morelos*, 168 Cal. App. 4th 758, 768 (Cal. Ct. App. 2008) (correcting an abstract of judgment upon application by the defendant); *People v. Garcia*, 168 Cal. App. 4th 261, 292 (Cal. Ct. App. 2008) (same). Because an abstract of judgment, like a minute order, "is prepared by a neutral officer of the court," and because a defendant has "the right to examine and challenge its content,"

*Snellenberger*, 2008 WL 4717190 at \*2, we may rely on it when applying the modified categorical approach. Accordingly, Anaya's conviction under California Penal Code § 12021(a)(1) qualifies as an "aggravated felony" conviction for immigration purposes.

**[4]** Anaya also argues that the judgment in his case does not contain the "critical phrase 'as charged in the Information,' " and so it does not establish that his prior crime was an aggravated felony. Anaya quotes our decision in *United States v. Vidal*, 504 F.3d 1072 (9th Cir. 2007) (en banc), where we explained that "[i]n order to identify a conviction as the generic offense through the modified categorical approach, when the record of conviction comprises only the indictment and the judgment, the judgment must contain the critical phrase 'as charged in the Information.' " *Id.* at 1087. In *Vidal*, the defendant's judgment stated that he was convicted of unlawfully driving or taking a vehicle and receiving stolen property, but did not provide sufficient information to establish that he had been convicted of each element of the federal generic crime. *Id.* at 1075-77. Although the criminal complaint provided sufficient facts to establish that the defendant had been charged with each element of the generic crime, we held that we could not rely on the information in the complaint unless it had been incorporated by reference in the judgment. *Id.* at 1087-88 (holding that "charging documents are insufficient alone to prove the facts to which a defendant admitted" (alterations and internal quotation marks omitted)). *Vidal* does not help Anaya, however, because here the abstract of judgment provides sufficient information to establish that he was convicted of each element of the generic federal crime, without reference to his charging document. Because under *Snellenberger* the information in the abstract of judgment is sufficient to establish that Anaya was convicted of all the elements of an "aggravated felony" under § 1101(a)(43)(E)(ii), the BIA correctly held him removable under § 1227(a)(2)(A)(iii).

### III

Anaya's next claim is that the IJ and BIA erred in holding that he was not eligible for withholding of removal, because his drunk-driving conviction does not constitute a conviction of a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii). He asserts that the BIA erred as a matter of law when determining whether his drunk-driving conviction was a "particularly serious crime" by considering the wrong factors and by basing its determination on the testimony Anaya gave at his removal hearing.

An alien is ineligible for withholding of removal "if the Attorney General decides that . . . (ii) the alien, having been convicted by final judgment of a particularly serious crime is a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B). Although 8 U.S.C. § 1252(a)(2)(B)(ii) deprives us of jurisdiction to evaluate discretionary decisions by the Attorney General, § 1252(a)(2)(D) preserves our jurisdiction to review "questions of law raised upon a petition for review." As a result, "[w]hile we cannot reweigh evidence to determine if the crime was indeed particularly serious, we can determine whether the BIA applied the correct legal standard in making its determination." *Afridi v. Gonzales*, 442 F.3d 1212, 1218 (9th Cir. 2006), *overruled in part on other grounds by Estrada-Espinoza v. Mukasey*, ___ F.3d ___, 2008 WL 4615681, *9 n.15 (9th Cir. Oct. 20, 2008) (en banc). Whether the BIA and IJ relied on improper evidence in making the "particularly serious crime" determination is one such question of law that we have jurisdiction to review. *See Morales v. Gonzales*, 478 F.3d 972, 980 (9th Cir. 2007).

### A

When we "confront[ ] questions implicating an agency's construction of the statute which it administers," the Supreme Court has directed us to "appl[y] the principles of deference described in *Chevron U.S.A., Inc. v. Natural Resources*

*Defense Council, Inc.*, 467 U.S. 837, 842 (1984)." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (internal quotation marks omitted). Accordingly, we ask "whether the statute is silent or ambiguous with respect to the specific issue before it." *Id.* (internal quotation marks omitted). If there is "binding agency precedent on-point (either in the form of a regulation or a published BIA case)," *Kharana v. Gonzales*, 487 F.3d 1280, 1283 n.4 (9th Cir. 2007), we will defer to that precedent so long as it is "reasonable," *see Morales*, 478 F.3d at 982; *see also Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004) (noting that we give deference "to the BIA's interpretation [of the INA] unless that interpretation is contrary to the plain and sensible meaning of the statute"). Moreover, a "circuit court must apply *Chevron* deference to an agency's interpretation of a statute regardless of the circuit court's contrary precedent, provided that the court's earlier precedent was an interpretation of a statutory ambiguity." *Duran Gonzales v. DHS*, 508 F.3d 1227, 1235-36 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980-82 (2005)). As *Brand X* explained, "[o]nly a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." 545 U.S. at 982-83.

**[5]** In *Morales*, we held that the BIA's interpretation of "what an IJ may refer to in deciding whether a prior offense is a particularly serious crime" was entitled to deference under *Chevron* and *Aguirre-Aguirre*. We based this holding on our conclusion that the INA is "silent regarding the basis for determining whether a conviction is for a particularly serious crime," and that the BIA's interpretation in *Matter of L—S—, 22 I. & N. Dec. 645, 651 (BIA 1999), was "based on a reasonable—and therefore permissible—construction of the statute." Morales*, 478 F.3d at 982. Deferring to *Matter of L—S—*, we held "that the particularly serious crime determination . . . may be made by looking only to the record of conviction and sentencing information." *Id.* We noted that the record

of conviction "consists of a narrow, specified set of documents that includes the state charging document, a signed plea agreement, jury instructions, guilty pleas, transcripts of a plea proceeding and the judgment," and that it "may also include any explicit factual finding by the trial judge to which the defendant assented." *Id.* (internal quotation marks and citations omitted).

**[6]** Citing *Morales*, Anaya argues that the IJ and BIA erred in relying solely on his removal-hearing testimony in holding that he had been convicted of a "particularly serious crime." But since our decision in *Morales*, the BIA has clarified its interpretation of what evidence "an IJ may refer to in deciding whether a prior offense is a particularly serious crime." 478 F.3d at 980. In a more recent precedential decision, *Matter of N—A—M—*, the BIA discussed the "particularly serious crime" determination under § 1231(b)(3)(B)(ii) and explained that

> once the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction.

24 I. & N. Dec. 336, 342 (BIA 2007). The BIA explained that, in its judgment, our decision in *Morales* had misconstrued its decision in *Matter of L—S—*, which, although allowing consideration of the record of conviction and sentencing information, "did not prohibit the examination of other evidence or indicate that only conviction records and sentencing information could be used." *Id.* According to the BIA, the limited inquiry that *Morales* erroneously held was required by *Matter of L—S—* would be inappropriate given the discretionary nature of the "particularly serious crime" determination:

> It has been our practice to allow both parties to explain and introduce evidence as to why a crime is particularly serious or not. We see no reason to exclude otherwise reliable information from consideration in an analysis of a particularly serious crime once the nature of the crime, as measured by its elements, brings it within the range of a "particularly serious" offense.

*Id.* The BIA therefore upheld an IJ's "particularly serious crime" determination based on the facts alleged in a "Statement in Support of Warrantless Arrest," as well as a judgment of conviction for "felony menacing" under Colorado law. *Id.* at 337 ("Under section 18-3-206(1) of the Colorado Revised Statutes, a person 'commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury.' ").

As noted in *Morales*, we must defer to the BIA's statutory interpretation regarding what evidence may be considered in deciding whether a prior offense is a particularly serious crime, *Morales*, 478 F.3d at 982, so long as the BIA's interpretation "is based on a reasonable—and therefore permissible—construction of the statute." *Id.* Under *Brand X*, we must apply *Chevron* deference to the BIA's most recent interpretation of § 1231(b)(3)(B)(ii) in *Matter of N—A—M—* if it is reasonable, regardless of our prior decision in *Morales*. *See Gonzales*, 508 F.3d at 1239.

**[7]** We now hold that the BIA's interpretation of the evidence that may be considered in a "particularly serious crime" determination, as set forth in *Matter of N—A—M—*, is reasonable. An IJ ordinarily considers any relevant evidence adduced at a removal hearing, 8 C.F.R. § 1240.1(c), and nothing in the language of the "particularly serious crime" provisions in the INA limits the scope of permissible evidence. *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii) & 1231(b)(3)(B)(ii). In under-

taking a case-specific consideration of whether the circumstances of an alien's prior crime made it "particularly serious," *see Afridi*, 442 F.3d at 1222, it is reasonable for the BIA to maintain its practice of "allow[ing] both parties to explain and introduce evidence as to why a crime is particularly serious or not." *Matter of N—A—M—*, 24 I. & N. Dec. at 344. We therefore defer to the BIA's reasonable conclusion that "all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction." *Id.* at 342. We are bound by *Brand X* to apply the BIA's interpretation in *Matter of N—A—M—*, rather than the interpretation in *Matter of L—S—* to which we previously deferred in *Morales*. *See Gonzales*, 508 F.3d at 1236 n.7.

B

[8] We now address whether a "particularly serious crime" determination may be based on an alien's own testimony at his removal hearing. We hold that such testimony is just the sort of "reliable information . . . outside the confines of a record of conviction" referred to in *Matter of N—A—M—*, 24 I. & N. Dec. at 342. We see no reason to question the reliability of testimony giving rise to a "particularly serious crime" determination where the alien is testifying under oath, *see* 8 C.F.R. § 1240.7(b), on his own behalf in order to obtain relief from removal, and risking ineligibility for asylum and withholding of removal should the IJ determine that he has been convicted of a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii). "Where the BIA does not make an explicit adverse credibility finding, we must assume that [the petitioner's] factual contentions are true." *Navas v. INS*, 217 F.3d 646, 652 n.3 (9th Cir. 2000); *see also Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004) ("Testimony must be accepted as true in the absence of an explicit adverse credibility finding."). Accordingly, we reject Anaya's argument that the BIA's reliance on his own testimony was improper.

## C

Anaya also argues that the BIA applied the wrong legal standard by failing to properly consider all the facts and circumstances giving rise to his drunk-driving conviction. Although we lack jurisdiction over the BIA's ultimate determination that Anaya committed a "particularly serious crime" when he drunkenly drove his car into an elderly victim's house and caused part of the wall to collapse on her, we retain jurisdiction to review whether the BIA used the correct legal analysis in reaching this conclusion. *See Afridi*, 442 F.3d at 1218. "[I]n most cases, determining whether a crime is particularly serious requires a case-by-case analysis, using 'such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, [and] the type of sentence imposed." *Id.* at 1219 (quoting *Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982)).

[9] The BIA's "approach to determining whether a crime is particularly serious has evolved since" *Matter of Frentescu. Matter of N—A—M—*, 24 I. & N. Dec. at 342. As *Matter of N—A—M—* explains, "once an alien is found to have committed a particularly serious crime, we no longer engage in a separate determination to address whether the alien is a danger to the community." *Id.* Thus, "[o]nce the INS makes a finding that an offense constitutes a particularly serious crime, a separate determination of danger to the community is not required." *Kankamalage v. INS*, 335 F.3d 858, 861 n.2 (9th Cir. 2003). This revised approach is contained in the current BIA regulations, which provide that "an alien who has been convicted of a particularly serious crime shall be considered to constitute a danger to the community." 8 C.F.R. § 1208.16(d)(2); *see also Matter of Carballe*, 19 I. & N. Dec. 357, 360 (BIA 1996) (explaining that "a separate determination of dangerousness focusing on the likelihood of future serious misconduct on the part of the alien" is not required by the statute because, when "determining whether a conviction is for [a particularly serious] crime, the essential key is

whether the nature of the crime is one which indicates that the alien poses a danger to the community").

**[10]** The record does not support Anaya's contention that the IJ and BIA committed legal error by failing to consider whether the type and circumstances of his crime indicate that he will be a danger to the community. The IJ's decision analyzed the nature of Anaya's drunk driving offense with sufficient reference to its dangerousness:

> Drunk driving results in untold loss of human potential, not to mention the thousands of deaths each year. [Anaya] was driving drunk and ran into a stranger's home. He hit the home with such force that the interior walls collapsed and injured a woman.
> . . . It strikes me that this woman, who was no doubt in some repose in her own home, had an expectation that she need not fear drunk drivers. [Anaya] shattered this belief by basically barging into her home with his car. He inflicted what the California statutes refer to as great bodily injury on her.

The BIA determined that Anaya's testimony "establishes that the respondent, after drinking alcohol to the point where he was intoxicated, began driving a motor vehicle in reckless disregard for persons or property whereupon he drove his car into the home of his victim causing property damage and bodily injury." The BIA also noted that Anaya "was confined for his criminal actions." We therefore conclude that the BIA properly considered "the nature of the conviction, the circumstances and underlying facts of the conviction, [and] the type of sentence imposed" when reaching its conclusion that Anaya's drunk driving constituted a "particularly serious crime." *Afridi*, 442 F.3d at 1219; *accord Matter of N—A—M —*, 24 I. & N. Dec. at 342 (reciting the same factors).

**[11]** Finally, Anaya argues that because "reckless disregard" is not an element of California Vehicle Code

§ 23153(b), his drunk-driving conviction cannot constitute a conviction of a "particularly serious crime." Although Anaya's argument is not entirely clear, he cites *Leocal v. Ashcroft*, 543 U.S. 1 (2004), which held that state DUI offenses "which either do not have a *mens rea* component or require only a showing of negligence in the operation of a vehicle" are not categorically "crime[s] of violence" under 18 U.S.C. § 16. *Id.* at 5. But the categorical and modified categorical approaches are not applicable to evaluating whether a crime is "particularly serious." *Matter of N—A—M—*, 24 I. & N. Dec. at 344. We therefore conclude that the BIA applied the correct legal standard in determining that Anaya was convicted "of a particularly serious crime and is a danger to the community of the United States," making him ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(ii).

## IV

We reject Anaya's arguments that he is not removable as an aggravated felon and that the BIA improperly determined that he had been convicted of a "particularly serious crime" based on his testimony at his removal hearing. Accordingly, Anaya's petition for review is **DENIED.**