# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VIRGILIO ANAYA-ORTIZ,
                    *Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,
                    *Respondent.*

No. 03-74666

Agency No.
A092-962-367

ORDER AND
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
August 6, 2007—Pasadena, California

Filed January 25, 2010

Before: Marsha S. Berzon and Sandra S. Ikuta, Circuit
Judges, and James K. Singleton,* Senior District Judge.

Opinion by Judge Ikuta

---

*The Honorable James K. Singleton, United States District Judge for
the District of Alaska, sitting by designation.

**COUNSEL**

Gary Finn, Indio, California, for the petitioner.

Jennifer J. Keeney and Melissa Neiman-Kelting, Washington, D.C., for the respondent.

**ORDER**

The opinion filed on January 27, 2009, and appearing at 553 F.3d 1266 (9th Cir. 2009) is withdrawn. The superseding opinion and memorandum disposition will be filed concurrently with this order.

Further petitions for rehearing or rehearing en banc may not be filed.

**OPINION**

IKUTA, Circuit Judge:

Virgilio Anaya-Ortiz (Anaya), a native and citizen of Mexico, petitions for review of a decision by the Board of Immigration Appeals (BIA) dismissing his appeal and ordering him removed to Mexico. We deny the petition.

I

On August 29, 2002, the former Immigration and Naturalization Service (INS) placed Anaya in removal proceedings. The INS charged that Anaya was removable due to his conviction for the crime of possession of a firearm by a felon, a violation of California Penal Code § 12021(a)(1). At Anaya's initial removal hearing, the immigration judge (IJ) agreed with the INS's position and found Anaya removable as charged.

Anaya then sought two forms of relief from removal: cancellation of removal under 8 U.S.C. § 1229b and withholding of removal under 8 U.S.C. § 1231(b)(3)(A).[1] The IJ determined that Anaya was ineligible for cancellation of removal because Anaya had been convicted of an aggravated felony, but granted Anaya a continuance to allow him to apply for withholding of removal.

After receiving Anaya's application for withholding of removal, the IJ reconvened a hearing on March 10, 2003 to determine Anaya's eligibility. An alien is ineligible for withholding of removal if "the alien, having been convicted by a

---

[1]Section 1231(b)(3)(A) provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."

final judgment of a particularly serious crime is a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B)(ii). At the hearing, Anaya admitted that he had pleaded guilty to being a felon in possession of a firearm on March 21, 2001. The predicate offense to his felon-in-possession conviction was a prior conviction for driving under the influence in violation of section 23153(b) of the California Vehicle Code, for which he was sentenced to one year in jail. According to his testimony before the IJ, Anaya drove into a house while driving drunk. The collision caused part of the house's sheetrock wall to collapse on an elderly woman who lived inside, causing injuries to her shoulder and leg.

On the basis of Anaya's testimony regarding his drunk driving conviction under California Vehicle Code § 23153(b), the IJ held that Anaya had been convicted of a "particularly serious crime" and was therefore ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(ii). The IJ also held that Anaya was ineligible for relief under the Convention Against Torture (CAT), 8 C.F.R. § 1208.16-18, and ordered him removed from the United States. Anaya appealed this decision to the BIA. On November 21, 2003, the BIA affirmed the IJ's decision and dismissed Anaya's appeal. Anaya timely filed a petition for review.

On appeal, Anaya argues that he is eligible for withholding of removal on the ground that his drunk-driving conviction does not constitute a conviction of a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii).[2] He asserts that the BIA made a legal error in determining Anaya's drunk-driving conviction was a "particularly serious crime" because it (1) relied on the testimony Anaya gave at his removal hearing,

---

[2]In a separate memorandum disposition issued today, we address Anaya's argument that the IJ and BIA also erred in holding that Anaya was removable as an aggravated felon under § 1101(a)(43)(E)(ii). *See Anaya-Ortiz v. Holder*, No. 03-74666, 2010 WL ___ (9th Cir. January 25, 2010).

and (2) failed to consider the appropriate factors giving rise to his drunk-driving conviction. We consider each of these alleged errors in turn.

## II

**[1]** Before considering whether the BIA erred in relying on Anaya's testimony at the removal hearing, we must first determine whether we have jurisdiction to review the BIA's alleged error. We do not have jurisdiction to evaluate discretionary decisions by the Attorney General, *see* 8 U.S.C. § 1252(a)(2)(B)(ii), and therefore lack jurisdiction over the BIA's ultimate determination that Anaya committed a "particularly serious crime" when he drunkenly drove his car into an elderly victim's house and caused part of the wall to collapse on her. *See Unuakhaulu v. Gonzales*, 416 F.3d 931, 935 (9th Cir. 2005) (holding that "when the Attorney General decides that the alien's offense was a 'particularly serious crime,' we lack jurisdiction to review such a decision because it is discretionary") (citation omitted). Nevertheless, we retain jurisdiction to review "questions of law raised upon a petition for review." § 1252(a)(2)(D). While "we cannot reweigh evidence to determine if the crime was indeed particularly serious, we can determine whether the BIA applied the correct legal standard in making its determination." *Afridi v. Gonzales*, 442 F.3d 1212, 1218 (9th Cir. 2006), *overruled in part on other grounds by Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1160 n.15 (9th Cir. 2008) (en banc). Therefore, we have jurisdiction to review whether the BIA and IJ failed to consider the appropriate factors, *Afridi*, 442 F.3d at 1220, or relied on improper evidence, *see Morales v. Gonzales*, 478 F.3d 972, 981 (9th Cir. 2007), in making the "particularly serious crime" determination.

## A

Accordingly, we turn to Anaya's argument that § 1231(b)(3)(B)(ii) precluded the IJ and BIA from relying on

Anaya's testimony at the removal hearing in making the determination that Anaya had been convicted of a "particularly serious crime." Because this raises a question of statutory interpretation, we "appl[y] the principles of deference described in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984)." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999). Under *Chevron*, we first ask "whether the statute is silent or ambiguous with respect to the specific issue before it." *Id.* (internal quotation marks omitted). If it is, then we determine whether there is "binding agency precedent on-point (either in the form of a regulation or a published BIA case)." *Park v. Holder*, 572 F.3d 619, 623-24 (9th Cir. 2009). We will defer to that precedent so long as it is "reasonable." *See Morales*, 478 F.3d at 982; *see also Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004) (noting that we give deference "to the BIA's interpretation [of the INA] unless that interpretation is contrary to the plain and sensible meaning of the statute"). A "circuit court must apply *Chevron* deference to an agency's interpretation of a statute regardless of the circuit court's contrary precedent, provided that the court's earlier precedent was an interpretation of a statutory ambiguity." *Gonzales v. DHS*, 508 F.3d 1227, 1235-36 (citing *Nat'l Cable & Telecommc'ns Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980-82 (2005)). As *Brand X* explained, "[o]nly a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." 545 U.S. at 982-83.

**[2]** We have previously held that the INA is "silent regarding the basis for determining whether a conviction is for a particularly serious crime" under § 1231(b)(3)(B)(ii) and therefore the BIA's interpretation of "what an IJ may refer to in deciding whether a prior offense is a particularly serious crime" is entitled to deference under *Chevron* and *Aguirre-Aguirre*. *Morales*, 478 F.3d at 980, 982. In *Morales*, we considered the BIA's precedential interpretation of

§ 1231(b)(3)(B)(ii) in *Matter of L–S–*, 22 I. & N. Dec. 645, 651 (BIA 1999). *Id.* at 981-82. We read *Matter of L–S–* as holding "that the particularly serious crime determination . . . may be made by looking only to the record of conviction and sentencing information," and held that the BIA's interpretation was "based on a reasonable—and therefore permissible—construction of the statute." *Id.* at 982. Therefore, we deferred to the BIA's interpretation, and further held that the record of conviction "consists of a narrow, specified set of documents that includes the state charging document, a signed plea agreement, jury instructions, guilty pleas, transcripts of a plea proceeding and the judgment," and that it "may also include any explicit factual finding by the trial judge to which the defendant assented." *Id.* (internal quotation marks and citations omitted).

**[3]** But after our decision in *Morales*, the BIA clarified its interpretation of what evidence "an IJ may refer to in deciding whether a prior offense is a particularly serious crime." *Id.* at 980. In its more recent precedential decision, *Matter of N–A–M–*, the BIA discussed the "particularly serious crime" determination under § 1231(b)(3)(B)(ii) and explained that

> once the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction.

24 I. & N. Dec. 336, 342 (BIA 2007). The BIA explained that *Morales* had misconstrued its decision in *Matter of L–S–*. *Id.* at 344. According to the BIA, *Matter of L–S–* allowed consideration of the record of conviction and sentencing information, but "did not prohibit the examination of other evidence or indicate that only conviction records and sentencing infor-

mation could be used." *Id.* In the BIA's view, the limited inquiry that *Morales* erroneously held was required by *Matter of L–S–* would be inappropriate given the discretionary nature of the "particularly serious crime" determination:

> It has been our practice to allow both parties to explain and introduce evidence as to why a crime is particularly serious or not. We see no reason to exclude otherwise reliable information from consideration in an analysis of a particularly serious crime once the nature of the crime, as measured by its elements, brings it within the range of a "particularly serious" offense.

*Id.* The BIA therefore upheld an IJ's "particularly serious crime" determination based on the facts alleged in a "Statement in Support of Warrantless Arrest," as well as a judgment of conviction for "felony menacing" under Colorado law. *Id.* at 337 ("Under section 18-3-206(1) of the Colorado Revised Statutes, a person 'commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury.' ").

As noted in *Morales*, we must defer to the BIA's statutory interpretation regarding what evidence may be considered in deciding whether a prior offense is a particularly serious crime, 478 F.3d at 982, so long as the BIA's interpretation "is based on a reasonable—and therefore permissible—construction of the statute." *Id.* Under *Brand X*, we must apply *Chevron* deference to the BIA's most recent interpretation of § 1231(b)(3)(B)(ii) in *Matter of N–A–M–* if it is reasonable, regardless of our prior decision in *Morales*. *See Gonzales*, 508 F.3d at 1239.

**[4]** We now hold that the BIA's interpretation of the evidence that may be considered in a "particularly serious crime" determination, as set forth in *Matter of N–A–M–*, is reason-

able. An IJ ordinarily considers any relevant evidence adduced at a removal hearing, 8 C.F.R. § 1240.1(c), and nothing in the language of the "particularly serious crime" provisions in the INA limits the scope of permissible evidence. *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii) & 1231(b)(3)(B)(ii). In undertaking a case-specific consideration of whether the circumstances of an alien's prior crime made it "particularly serious," *see Afridi*, 442 F.3d at 1220, it is reasonable for the BIA to maintain its practice of "allow[ing] both parties to explain and introduce evidence as to why a crime is particularly serious or not." *Matter of N–A–M–*, 24 I. & N. Dec. at 344. Because we are bound by *Brand X* to apply the BIA's interpretation in *Matter of N–A–M–*, rather than our prior interpretation of *Matter of L–S–*, *see Gonzales*, 508 F.3d at 1236 n.7, we therefore defer to the BIA's reasonable conclusion that "all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction," *Matter of N–A–M–*, 24 I. & N. Dec. at 342.

B

**[5]** We now turn to Anaya's argument that the IJ and BIA erred in relying solely on his removal hearing testimony in holding that he had been convicted of a "particularly serious crime." We hold that such testimony is just the sort of "reliable information . . . outside the confines of a record of conviction" referred to in *Matter of N–A–M–*, 24 I. & N. Dec. at 342. We see no reason to question the reliability of testimony giving rise to a "particularly serious crime" determination where the alien is testifying under oath, *see* 8 C.F.R. § 1240.7(b), on his own behalf in order to obtain relief from removal, and risking ineligibility for asylum and withholding of removal should the IJ determine that he has been convicted of a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii). "Where the BIA does not make an explicit adverse credibility finding, we must assume that [the

petitioner's] factual contentions are true." *Navas v. INS*, 217 F.3d 646, 652 n.3 (9th Cir. 2000); *see also Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004) ("Testimony must be accepted as true in the absence of an explicit adverse credibility finding."). Accordingly, we reject Anaya's argument that the BIA's reliance on his own testimony was improper.

## III

**[6]** We next consider Anaya's only other argument, that the BIA erred by failing to consider the appropriate factors in determining his drunk-driving conviction constituted a particularly serious crime. The BIA has previously held that determining whether a crime is particularly serious requires a case-by-case analysis, using "such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." *In re Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982), *superceded by statute in part*, 8 U.S.C. § 1253(h)(1991), *as recognized in Miguel-Miguel v. Gonzales*, 500 F.3d 941, 946 (9th Cir. 2007). Deferring to this interpretation of § 1231(b)(3)(B)(ii), we have held that these *Frentescu* factors constitute the applicable legal standard for determining whether a particularly serious crime has been committed. *See Afridi*, 442 F.3d at 1219. However, the BIA's "approach to determining whether a crime is particularly serious has evolved" since *Matter of Frentescu. Matter of N–A–M–*, 24 I. & N. Dec. at 342. The applicable legal standard for determining whether the alien has committed a particularly serious crime no longer requires the BIA to engage "in a separate determination to address whether the alien is a danger to the community." *Id.*; *see also Kankamalage v. INS*, 335 F.3d 858, 861 n.2 (9th Cir. 2003) ("Once the INS makes a finding that an offense constitutes a particularly serious crime, a separate determination of danger to the community is not required."). The BIA has promulgated this interpretation in a regulation, which provides that "an alien who has

been convicted of a particularly serious crime shall be considered to constitute a danger to the community." 8 C.F.R. § 1208.16(d)(2). Therefore, in considering whether the BIA has applied the correct legal standard for determining whether a particularly serious crime has been committed, we must refer to the *Frentescu* factors as subsequently modified by the BIA.

[7] Contrary to Anaya's argument, the IJ here analyzed the nature of Anaya's drunk driving offense with sufficient reference to the *Frentescu* factors as modified. The IJ noted the applicable standard, stating that "[t]o determine whether an alien has been convicted of a particularly serious crime, the Court weighs the facts and circumstances underlying the conviction, as well as the sentence imposed on the respondent." The IJ stated that Anaya's first felony conviction was for "driving under the influence of alcohol and personally inflicting great bodily injury." Finally, the IJ explained his view of the dangerousness of the crime:

> Drunk driving results in untold loss of human potential, not to mention the thousands of deaths each year. [Anaya] was driving drunk and ran into a stranger's home. He hit the home with such force that the interior walls collapsed and injured a woman . . . . It strikes me that this woman, who was no doubt in some repose in her own home, had an expectation that she need not fear drunk drivers. [Anaya] shattered this belief by basically barging into her home with his car. He inflicted what the California statutes refer to as great bodily injury on her.

The BIA determined that Anaya's testimony "establishes that the respondent, after drinking alcohol to the point where he was intoxicated, began driving a motor vehicle in reckless disregard for persons or property whereupon he drove his car into the home of his victim causing property damage and bod-

ily injury," and also noted that Anaya "was confined for his criminal actions." We therefore conclude that the IJ and BIA did consider "the nature of the conviction, the circumstances and underlying facts of the conviction, [and] the type of sentence imposed" when reaching the conclusion that Anaya's conviction constituted a "particularly serious crime." *Afridi*, 442 F.3d at 1219; *accord Matter of N–A–M–*, 24 I. & N. Dec. at 342 (reciting the same factors). We reiterate that we are not reviewing or approving the ultimate conclusion that the drunk driving conviction under California Vehicle Code § 23153(b) was for a particularly serious crime, because we lack the jurisdiction to do so in this context. *See Delgado v. Holder*, 563 F.3d 863, 871 (9th Cir. 2009).

**[8]** Anaya also argues that because "reckless disregard" is not an element of California Vehicle Code § 23153(b), his drunk-driving conviction cannot constitute a conviction for a "particularly serious crime." Although Anaya's argument is not entirely clear, he cites *Leocal v. Ashcroft*, 543 U.S. 1 (2004), which held that state DUI offenses "which either do not have a *mens rea* component or require only a showing of negligence in the operation of a vehicle" are not categorically "crime[s] of violence" under 18 U.S.C. § 16. *Id.* at 6. But the categorical and modified categorical approaches articulated in *Taylor v. United States*, 495 U.S. 575 (1990), are not applicable to evaluating whether a crime is "particularly serious." *See Matter of N–A–M–*, 24 I. & N. Dec. at 344 (noting that no "decision of which we are aware[ ] has ever suggested that the categorical approach, used primarily in determining removability, is applicable to the inherently discretionary determination of whether a conviction is for a particularly serious crime").

**[9]** We therefore conclude that the BIA applied the correct legal standard in determining that Anaya was convicted "of a particularly serious crime and is a danger to the community of the United States," making him ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(ii).

IV

Accordingly, we reject Anaya's argument that the IJ and BIA improperly determined that he had been convicted of a "particularly serious crime." The IJ and BIA did not err in relying on Anaya's testimony at the removal hearing nor did they apply an erroneous legal standard. Because we also reject Anaya's argument that the IJ and BIA erred in holding that he was not eligible for withholding of removal in a separate memorandum disposition, *see Anaya-Ortiz v. Holder*, No. 03-74666, 2010 WL ___ (9th Cir. January 25, 2010), Anaya's petition for review is **DENIED.**