**NOT FOR PUBLICATION**



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FREDY ALBERTO SANDOVAL-LEMUS, AKA Fredi Alberto Sandoval, AKA Fredy Alberto Sandoval,<br><br>            Petitioner,<br><br>   v.<br><br>JEFFERSON B. SESSIONS III, Attorney General,<br><br>            Respondent. | No.   14-70378<br><br>Agency No. A055-808-064<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 16, 2017[**]
San Francisco, California

Before: THOMAS, Chief Judge, WARDLAW, Circuit Judge, and MORRIS,[***] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Brian M. Morris, United States District Judge for the District of Montana, sitting by designation.

Fredy Alberto Sandoval-Lemus ("Sandoval"), a native and citizen of El Salvador, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the immigration judge's ("IJ") denial of his applications for withholding of removal and protection under the Convention Against Torture ("CAT"). Because Sandoval was found removable on account of an aggravated felony conviction, we may review only those factual issues that are related to the agency's denial of relief on the merits. *See* 8 U.S.C. § 1252(a)(2)(C), (D); *Pechenkov v. Holder*, 705 F.3d 444, 448 (9th Cir. 2012). Because the BIA adopted the IJ's decision but also independently reviewed the evidence and law, we review both decisions. *See Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011). We deny Sandoval's petition for review.

**1.** Sandoval was convicted of (1) an attempted lewd act upon a child under fourteen and (2) contacting a child with the intent to commit a specific crime. The agency found that these convictions, which arose out of the same incident, constituted a particularly serious crime rendering Sandoval ineligible for withholding of removal. Because that was a threshold determination concerning Sandoval's eligibility for relief—rather than an adjudication on the merits—we do not have jurisdiction to review the agency's factual finding. *See Pechenkov*, 705

F.3d at 448. However, we may review legal or constitutional questions related to the agency's analysis. *See* 8 U.S.C. § 1252(a)(2)(D).

Sandoval raises one legal issue. He contends that, in determining that his crime was particularly serious, the agency impermissibly relied on the description of the crime in a Pre-Plea Report. A probation officer prepared that report by summarizing, among other things, a police report from Sandoval's arrest. That police report, and in turn, the Pre-Plea Report, recounted the sting operation that led police officers to Sandoval, as well as Sandoval's purported statements to the officers who arrested him.

In immigration proceedings, due process requires only that evidence is "probative and its admission is fundamentally fair." *Sanchez v. Holder*, 704 F.3d 1107, 1109 (9th Cir. 2012) (per curiam) (quoting *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995)). In addition, the agency has interpreted the withholding of removal statute to allow it to consider "all reliable information" in a particularly serious crime determination. *In re N–A–M–*, 24 I. & N. Dec. 336, 342 (BIA 2007). This includes "the conviction records and sentencing information, as well as other information outside the confines of a record of conviction." *Id.* In *Anaya-Ortiz v. Holder*, 594 F.3d 673 (9th Cir. 2010), we deferred to that interpretation. *Id.* at 678.

The Pre-Plea Report met the due process standard for admission. The report was probative of the seriousness of Sandoval's conviction: it described his electronic communications with an officer pretending to be a thirteen-year-old child, and his statements to arresting officers admitting that he was aware of the child's age. Its admission was also fundamentally fair. Hearsay is admissible in immigration proceedings. *See Sanchez*, 704 F.3d at 1109. This includes police reports. *See Rizk v. Holder*, 629 F.3d 1083, 1088–91 (9th Cir. 2011). Moreover, we have held that it is fundamentally fair to admit a government document even when the petitioner challenges its memorialization of his statements. *See Sanchez*, 704 F.3d at 1109.

The Pre-Plea report contains facts that may be considered in a particularly serious crime determination. Though we have suggested that there may be limits to the use of a police report, *see Alphonsus v. Holder*, 705 F.3d 1031, 1047 n.15 (9th Cir. 2013), the agency's analysis did not implicate any of those hypothetical limits. Sandoval did not specifically dispute the facts in the Pre-Plea Report, but merely testified that he could not remember certain details about his conviction. In addition, the agency did not rely on the report beyond the facts supporting Sandoval's conviction.

**2.**     Substantial evidence supports the agency's denial of deferral of removal under CAT.  Sandoval bore the burden of proving that it was "more likely than not that he . . . would be tortured if removed" to El Salvador.  *Nuru v. Gonzales*, 404 F.3d 1207, 1216 (9th Cir. 2005) (alteration in original) (quoting *Al-Saher v. INS*, 268 F.3d 1143, 1147 (9th Cir. 2001)).

Sandoval did not adduce evidence of past torture, which "is ordinarily the principal factor" supporting an applicant's eligibility for CAT protection.  *See id.* at 1218; *see also Edu v. Holder*, 624 F.3d 1137, 1145 (9th Cir. 2010).  He did present country reports showing violence against the LGBT community in El Salvador, including violence perpetrated by police.  One report documented eleven reported murders of LGBT individuals in 2008, twenty-three in 2009, and ten in 2010.  However, the attacks were not so pervasive as to compel the conclusion that Sandoval met the high bar for CAT relief—that he would more likely than not be tortured.

Further, though Sandoval's father and two other family members were attacked in El Salvador, the evidence did not show that the perpetrators were targeting his family and thus that they would seek him out.  Rather, the evidence indicated that the attacks were financially motivated.  Additionally, one of Sandoval's uncles has continued to live in El Salvador without being harmed.  His

5

father has also been safe during numerous return visits to El Salvador, as has his grandmother. This evidence supports the BIA's finding that Sandoval did not face a high risk of being attacked upon return. *See Santos-Lemus v. Mukasey*, 542 F.3d 738, 748 (9th Cir. 2008) ("[B]ecause Santos-Lemus's mother has remained safely in his hometown, substantial evidence supports the Board's finding that it is not more likely than not that Santos-Lemus will be tortured by or with the consent or acquiescence of the Salvadoran government upon return."), *abrogated on other grounds by Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013). Moreover, there is no evidence that the Salvadoran government would acquiesce in any future torture perpetrated against Sandoval. Though the police failed to investigate the attack on one of his family members, they investigated the two others.

**PETITION FOR REVIEW DENIED.**