NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 6 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FRANCISCO LOPEZ BARTOLO,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 23-1578

Agency No.
A218-146-518

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 16, 2024
San Francisco, California

Before: TASHIMA, CALLAHAN, and KOH, Circuit Judges.

Petitioner Francisco Lopez Bartolo, a native and citizen of Mexico, petitions

for review of the Board of Immigration Appeals' ("BIA") order dismissing his

appeal from an Immigration Judge's ("IJ") decision denying his application for

withholding of removal and relief under the Convention Against Torture ("CAT").[1]

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[1]    Petitioner claims that he applied for asylum, but his I-589 stated that he was
"not arguing eligibility for asylum." The IJ thus analyzed Petitioner's claims for

We have jurisdiction under 8 U.S.C. § 1252 and deny the petition.

1.      Petitioner was convicted of voluntary manslaughter under California Penal Code § 192(a), for which he was sentenced to three years' imprisonment, and attempting to dissuade a witness by threat of force under California Penal Code § 136.1(c)(1), for which he was sentenced to two years' imprisonment. His sentence was enhanced by ten years under California's mandatory gang enhancement, California Penal Code § 186.22(b)(1)(c). The IJ concluded that Petitioner was convicted of a "particularly serious crime" and thus ineligible for withholding of removal. *See* 8 U.S.C. § 1231(b)(3)(B)(ii). The BIA agreed, "considering the totality of the circumstances, and for the reasons discussed by the Immigration Judge." Whether an offense constitutes a "particularly serious crime" is reviewed for abuse of discretion, and "[u]nder that standard, we are limited to ensuring that the agency relied on the appropriate factors and proper evidence, and we may not reweigh the evidence and reach our own determination about the crime's seriousness." *Hernandez v. Garland*, 52 F.4th 757, 765 (9th Cir. 2022) (internal quotations omitted).

---

only withholding of removal and CAT relief. The final page of the IJ's order stating that it was denying Petitioner's "application for asylum," and the BIA's statement that the IJ denied Petitioner's "application[] for asylum," appear to have been made in error and do not affect the nature of Petitioner's appeal. In any event, our determination that Petitioner is ineligible for withholding of removal applies equally to any claim for asylum. *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii); 1231(b)(3)(B)(ii).

Petitioner argues that the BIA erred by not considering evidence of his mental state at the time he committed the voluntary manslaughter. Because the BIA's decision relied on "the reasons discussed by the Immigration Judge," however, we review both the BIA's decision and the "IJ's decision to the extent incorporated." *Medina-Lara v. Holder*, 771 F.3d 1106, 1111 (9th Cir. 2014); *Aguilar-Ramos v. Holder*, 594 6 F.3d 701, 704 (9th Cir. 2010). And here, the IJ did consider petitioner's mental health, concluding that there was "little information as to what impact the mental health or disorder, if it existed at the time, was implicated." The BIA similarly noted that Petitioner did "not point to any facts in the record before the Immigration Judge that relate to his mental health at the time he committed the crime that could potentially change the analysis." Further, while Petitioner's prison health records include assessments of when and how his mental health issues first developed, those records also state that Petitioner's "symptoms began on (01/17/20)," which is years after he committed the voluntary manslaughter in 2012. We conclude that the BIA and IJ (collectively, "agency") properly considered Petitioner's mental health at the time he committed voluntary manslaughter.

Petitioner next argues that the agency misapplied the "*Frentescu* factors" by considering his ten-year gang enhancement and by noting that he entered a plea after initially being charged with murder. But "nothing in the language of the

3

'particularly serious crime' provisions in the INA limits the scope of permissible evidence," *Anaya-Ortiz v. Holder*, 594 F.3d 673, 678 (9th Cir. 2010), and the agency may properly consider sentencing enhancements in applying the *Frentescu* factors. *See Konou v. Holder*, 750 F.3d 1120, 1128 (9th Cir. 2014). Further, while the IJ "note[d]" that Petitioner entered a plea after being charged with murder, the BIA did not incorporate this portion of the IJ's decision. *See Medina-Lara*, 771 F.3d at 1111. However, even if it did, the agency may consider "all reliable information . . . including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction," *Anaya-Ortiz*, 594 F.3d at 678, and there is no indication that the agency relied on Petitioner's murder charge to "trump" the crime to which Petitioner plead guilty. *Cf. Chang v. INS*, 307 F.3d 1185, 1192 (9th Cir. 2002).

Petitioner finally argues that, notwithstanding the agency's determination that he was convicted of a particularly serious crime, the agency's failure to consider whether he would be a danger to the community "contravenes the plain text of the INA." Petitioner also argues and that this court's "theory and reasoning" in *Ramirez-Ramos v. INS*, 814 F.2d 1394, 1397 (9th Cir. 1987), which found the agency's interpretation of the statutory language in 8 U.S.C. § 1231(b)(3)(B)(ii) "reasonable," is "clearly irreconcilable" with *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). *See Miller v. Gammie*, 335 F.3d

4

889, 900 (9th Cir. 2003) (en banc).

As a three-judge panel, we are bound by the holding in *Ramirez-Ramos* that no present dangerousness finding is required unless *Loper Bright* "undercut the theory or reasoning underlying [*Ramirez-Ramos*] in such a way that the cases are clearly irreconcilable." *Gammie*, 335 F.3d at 900. In *Loper Bright*, the Supreme Court made clear that it did "not call into question prior cases that relied on the *Chevron* framework," such as *Ramirez-Ramos*, and that "[t]he holdings of those cases that specific agency actions are lawful . . . are subject to statutory *stare decisis*." 144 S. Ct. at 2273. In light of this clear directive, we hold that *Ramirez-Ramos* "remains precedential authority which binds us." *See Lopez v. Garland*, 116 F.4th 1032, 1045 (9th Cir. 2024). *Ramirez-Ramos* is not "clearly irreconcilable" with *Loper Bright*, *see Gammie*, 335 F.3d at 900, and the agency correctly determined that Petitioner is ineligible for withholding of removal.

2.     Substantial evidence supports the agency's conclusion that mental health workers in Mexican psychiatric hospitals do not have the "specific intent" to commit torture through the use of Electro Convulsive Therapy ("ECT"), forced restraint, or isolation. The IJ found that the use of ECT, forced restraint, or isolation at state-run psychiatric institutions was "to modify the behavior" of patients and "not necessarily to specifically impose severe pain or suffering." In support, the IJ relied on Petitioner's expert who testified that "she did not know the

5

motivations" of the mental health workers, and that there was no evidence that Mexican mental health reforms were "being done for a cynical purpose or with an intent to harm individuals." The BIA then found that, even assuming Petitioner would be institutionalized and "exposed to deplorable, squalid, and even abusive conditions, there is no clear error in the Immigration Judge's finding that these conditions are the result of failed attempts at reform and the difficulty of allocating scarce resources, and are not specifically intended to inflict torture on mental health patients or prisoners."

Petitioner argues that the BIA erred in applying a clear error standard of review because the agency accepted the factual premise that mental health workers' intent was to modify patient behavior, and "*not* to provide medical care." But modifying patient behavior is not categorically at odds with providing medical care, and "[w]hether government officials act with specific intent to inflict severe pain or suffering is a question of fact that is subject to clear error review." *Guerra v. Barr*, 974 F.3d 909, 913 (9th Cir. 2020). It was therefore a question of fact for the IJ whether Mexican mental health workers use certain treatments to modify patient behavior for the patient's health and wellbeing or for the "specific intent to inflict severe pain or suffering." The IJ found that the mental health workers sought to modify patient behavior without the requisite "specific intent" for torture, and the BIA properly applied clear error review to this factual finding.

Petitioner also argues that the use of ECT, restraints, and isolation for behavior modification *per se* constitutes torture. According to Petitioner, "[n]o published data considers behavior modification an acceptable use of ECT, nor did the IJ find that it was being used for the potentially appropriate purpose of medical treatment." However, Petitioner's expert acknowledged that ECT can be a "legitimate form of psychiatric treatment," and a 2015 Disability Rights International report in the record explained that some psychiatrists view the use of ECT as "a treatment that can save lives." Thus, the IJ rejected Petitioner's contention that ECT was being used with a nefarious intent to harm.

Further, Petitioner argues that "behavior modification" necessarily constitutes a proscribed purpose because it involves "coercing," "punishing," and "intimidating" mental health patients. But modifying a person's behavior does not always involve "coercing," "punishing," or "intimidating" that individual. The BIA noted that while behavior modification *may be* considered a proscribed purpose, Petitioner pointed to "no evidence in the record" establishing that the behavior modification practices here are done for any proscribed purpose.[2]

---

[2] For similar reasons, Petitioner's reliance on *Iglesias-Iglesias*, a non-precedential decision, is unpersuasive because the agency in that case found that mental health workers restrained patients "for fun" and employed shock therapy "as punishment." *Iglesias-Iglesias v. Garland*, No. 20-70650, 2022 WL 898597, at *3 (9th Cir. 2022). The agency here found that mental health workers did not have a similarly proscribed intent.

7

3.     Petitioner's remaining arguments also fail.  Petitioner argues that the BIA "absolved" the IJ of the need to address the possibility of his risk of torture in *anexos*,[3] but the BIA correctly explained that the IJ was not obligated to "specifically and in detail address" this possibility, especially where the IJ cited a country conditions report containing evidence of *anexos*, and explicitly stated that he had "considered all of the evidence" in the record.  *See Garcia v. Holder*, 749 F.3d 785, 791–92 (9th Cir. 2014).  Second, Petitioner's argument that the BIA failed to consider country conditions reports lacks merits.  The IJ found that Petitioner's expert testified to facts that were "corroborated" by the country conditions evidence, and Petitioner has not pointed to anything that would rebut "the presumption that the BIA reviewed the record and considered all relevant evidence."  *Park v. Garland*, 72 F.4th 965, 979 (9th Cir. 2023).

**PETITION DENIED**.

---

[3]     Petitioner refers to *anexos* as "underground rehabilitation centers," and exhibits submitted by Petitioner indicate that *anexos* are privately operated rehabilitation centers run by organized crime groups.